The opinion of the court was delivered by
Monroe, J.
The relator seeks by mandamus, under Act No. 133 of 1888, to compel the defendant to put in good order and repair, according to the terms of a certain contract, and agreeably to certain specifications, which are annexed to the petition, the lake side of St. Charles avenue, between Louisiana avenue and Dublin street, in the city of New Orleans. The defence is set 'out at considerable length, and will appear in the statement of the case.
The facts, disclosed by the evidence and admissions, are as follows, to-wit:—
*1572 Upon August 7, 1882, die city, by notarial contract, granted to tlie defendant a right of way, for a street railroad, for twenty-five years from Eebruary 10, 1883, in consideration whereof, the defendant assumed certain obligations^ and, among them, the following, to-wit: “To keep in good order, and condition, at all times, * * * the streets, or roadways, bordering on the neutral ground of St. Charles avenue from Lee Circle to Madison street, in Carrollton, from curb to curb, also including crossings, bridges, culverts, and intersections”, etc.
At that time the lajke side of St. Charles avenue, between Louisiana avenue and Dublin street (being the portion of the avenue which is involved in the present controversy) was an unpaved, dirt street, and defendant was obliged by its contract, merely to keep it in'“good order and condition.”
In 1892, the city, by notarial contract, of date October 13th, extended the grant, made to the defendant in 1882, for an additional term of twenty-five years from the expiration of said previous grant, and, in consideration of such extension, the defendant assumed other obligations, and, among them, the following, to-wit: “To expend not less than $150,-000 * * * in the paving, with gravel, of the wood side of St. Chernies avenue, from Louisiana avenue to ‘Madison street’, the Work to be done according to plans and specifications prepared by the City Engineer and approved by the City Council, and provision being made that any unexpended balance of said $150,000 should be used in the paving of Jackson avenue with asphalt and Belgian blocks. It was also stipulated that all the paving work should be maintained “in thorough order * * * on the notification, and to the satisfaction of the Commissioner of Public Works, during the extended term of the franchise, and that, in the event of defendant’s violation or neglect of its obligations, the city should have the right, “at its option, and by its proper iofficers, of rectifying such violation and neglect, at the cost, charge, and expense of said company”, etc.
Agreeably to this plan, the city, in June, 1893, entered into a contract with the Rosetta Gravel Company, whereby the latter agreed to do the paving, the payment for which was thus provided for; and also agreed “to keep said street, when completed, in good order and condition, for the term of five years from its completion by said contractor and acceptance by the Commissioner of Public Works and City Engineer, and to deliver the same, with the gutters, crossings, etc., at the ex *1573 piration of said five years, in perfect good order and condition,” etc. And in the contract so made, the defendant intervened and bound itself to pay, promptly, upon certificates to be issued by the city, for the paving thus to be done, and also bound itself to maintain and keep in repair that part of the avenue covered by said paving contract, “to begin on the date of the expiration of the five years, during which the said Rosetta Gravel, etc. Company, by this contract, is required to Iceep the street in repair, as provided in the contract between the city of New Orleans and the New Orleans and Carrollton Railroad Company.”
It is not disputed that the defendant paid the $150,000 for the paving so contracted for by the city, which was done under the latter’s direction and supervision; and it is not pretended that during the five years following the laying of said pavement, any demand was made upon the defendant with respect to its maintenance, nor does it appear that any such demand was made upon the Gravel Company, so that, shortly before the expiration of the five years, that portion of the avenue upon which the gravel had been laid was in an abnormally bad condition, and the president of the defendant company, upon June 29, 1898, wrote to the Mayor, calling his attention to- it, claiming that his company had been relieved of its obligation of maintenance, by the contract with the Rosetta Gravel Company, during the period covered by that contract; and concluding as follows, to-wit: “Without inquir- “ ing by whose fault this condition of affairs was caused, it is clearly “ the city’s duty to put the street in condition before asking- this com- “ pany to take charge of it. We therefore invite an immediate confer- “ enee, with a view to determining, if we can, what is the best interest “ of everybody.”
As a result of this letter, there was some conference between the officers of the city and of the defendant, in the course of which it was ascertained that the Gravel Company’s term of maintenance would not expire for several months, but nothing came of the conference, and no steps appear to have been taken to compel the Gravel Company to put the avenue in order.
The proposition of the city now is, that the defendant shall be compelled to put said avenue in the 'condition in which it would have been if it had been properly maintained from the time that the gravel was laid agreeably to the specifications which are attached to. the petition, and it is admitted that notice and demand to that effect were given and *1574 made prior to the institution of this 'suit. The evidence shows that the cost of this work would, probably, exceed $12,000.
The grounds of defense relied on, are:
3. That the obligation with respect to keeping said avenue in order, after the pavement was laid, became effective, only, on the expiration of the five years .covered by the contract between the city and the gravel conrpany.
2. That said obligation, if any there be at this time, is not sufficiently defined to authorize the issuance of the writ of mandamus.
3. That if the city has any right in the premises, it is to have the work done that it considers should be done under the defendant’s contract, and bring suit for the cost of the same.
4. That the city and the gravel company, having failed to maintain the avenue in question in good order, and having allowed it to fall into an abnormally bad condition, the work now required to put it in the condition demanded by the relator is that of reconstruction and not .of repair, or maintenance, ahd that respondent is not bound for such work, and is not bound to take charge of said avenue, for the purpose of keeping it in order, until it has first been put in order.
The questions thus presented will be considered in the order stated.
I.
The obligation of the defendant, under its contract of August 7, 1882, is plain and positive ‘Ho keep in good order and condition, at all times “ * * * the ■streets * * * from curb to curb, also including "crossings, bridges, culverts and intersections”. By the contract of October 13,1892, whereby the defendant agreed, irt consideration of the further extension of its franchise, to furnish $150,000, to be expended in gravel, asphalt and Belgian block pavement (though mainly in gravel), thereafter to be laid by the city, the defendant bound itself by the following stipulation, to-wit:
“All this paving work, both gravel and Belgian * * * shall be “ maintained in thorough order, up to grade, smooth and solid, on the- “ notification and to the satisfaction of the Commissioner of Public “ Works, during the extended term of the franchise.”
This obligation was assumed, before any contract for gravel paving was entered into by the city, in clear and specific terms, and is based *1575 upon a valuable consideration. There was no condition in the contract, of which it forms part, that the city should require the paving contractor to keep his work in repair, or that the defendant should be made a party to any paving contract that the city might enter into. But, inasmuch as the defendant had bound itself, to the city, to furnish the money necessary for such contract, to the extent of $150,000,— when the paving contract was made, it — the defendant — intervened as the party who was to be paymaster, and took upon itself the same obligations quoad the contractor that it had already assumed between itself and the city, i. e., to pay for the work. It appears that the city thought proper to require of the paving contractor (the Rosetta Gravel Co.) that it should agree to keep the avenue to be paved by it in order for five years, but it need not have done so, and if it had not been so required there could never have arisen the slightest question as to the obligation of the defendant to keep such avenue in order, since the defendant had especially agreed to keep the same in thorough order, at all times, during the extended term of its franchise; nor, if the defendant had not intervened in the paving contract, could it ever, 'with any show of reason, have been claimed that, because the city required the paving contractor to look after the work done by it, therefore, the defendant was released from its obligation, imposed by a different and independent contract, 'to keep in order the streets through which it operates its road. The question, then, arises, is there anything in the intervention referred to, from which such release is, necessarily, to be deduced? We think not! The obligation to keep in thorough order several miles of the finest avenue in a large city is rather a serious one, and must involve the expenditure of considerable money, and yet, it is not pretended that the defendant gave any consideration for its release therefrom, and it will not be presumed that the city consented, gratuitously, to such release merely because another contractor, for a valuable, and totally different, consideration, had become similarly bound. In fact it may well be doubted, whether it would accord with the spirit of the Constitution, for a municipal corporation to grant a release, under such circumstances (Const. 1879, Art. 57). Inasmuch, however, as the defendant had intervened in, and was thus la party to, the contract with the Gravel Company, though the main purpose of this intervention was, as we think, that it should assume the position of paymaster, it seemed appropriate that something should be said as to its relation to *1576 the maintenance of the work to be done, for which it was already bound, and for which the Gravel Company was'also binding itself. The president of the company, therefore, declared that “He does, hereby “ bind and obligate said company lo promptly pay, in cash, current “money, the certificates, which may be issued by the city of New Or- “ leans to the Rosetta Gravel 45 * 48 Company, for the paving and “other worle to be done in pursuance of the' foregoing contract. Also “ he binds and obligates said 'X1 48 48 company, to maintain and “ heep in repair that part of St. Charles avenue which is lo be paved “ and covered by the foregoing ctintract, lo begin on the dale of the ex- “ piration of the five years during which the said Rosetta Gravel, etc., “ Company is, by this contract, required to heep said, street in repair, as “provided in the contract between the city of New Orleans and the “New Orleans & Carrollton Railroad Company.”
The obligation, then, was that the defendant should maintain and keep in repair, etc., “as provided in the contract” already in existence between it and the city, which made it liable for such maintenance at all times, and the stipulation that it “should begin on the expiration of the five years”, during which the Gravel Company bound itself for such maintenance, was manifestly introduced upon the assumption that the Gravel Company would comply with its obligation in the premises and that it would, therefore, be unnecessary for the city to call upon the defendant. We do not understand, however, that it was the purpose of this stipulation, in the event that the paving was not kept in order by the Gravel Company, to release the defendant from its obligation with respect thereto which had been! inrposed upon it by contracts previously made, and for which it had received, and was receiving, valuable consideration. We, therefore, conclude that said obligation remained unchanged, to the extent that the city might have called upon the defendant, notwithstanding the stipulation in the paving contract, to keep the work done under that contract, and the avenue on which it was done, in order, from the time of the completion of such work.
II.
The proposition that, by the terms of its contract, the only remedy afforded the city, in case of the failure of the defendant to comply with its obligations with respect to keeping the street in order, is to have the work done, and bring suit against the defendant for the cost, can not *1577 be sustained. The remedy thus afforded is cumulative with those provided by law. The contract of October, 1892, expressly provides that the city shall have the right “at its option” to rectify the omission or neglect of the defendant, and, thereafter, to bring suit to recover the cost.
III.
The relator, as a preliminary to the bringing of this action, took the precaution to have that portion of St. Charles avenue to which the application for mandamus relates inspected by a competent engineer, accompanied by an engineer representing the defendant. These two gentlemen agreed as to the work that should be done in order to restore the avenue to a condition of good order, and their agreement is embodied in the specifications upon which the relator sues. We find nothing uncertain about this, and were it not that the work, thus called for, is, in a greater or less degree,, the result of continued neglect, for which the defendant should not be held responsible, we should find no difficulty in making the mandamus peremptory. Act 133 of 1888; State ex rel. City vs. R. R. Co., 42 Ann., 11; State ex rel. City vs. R. R. Co., 42 Ann., 550; Same vs. Same, 57 U. S., 219. In the case last cited, the Supreme Court of the United States, affirming' the judgment of this court in the matter of the State ex rel. City vs. N. O. City & Lake R. R. Co., 42 Ann., 550, said, concerning Act 133 of 1888: “That statute “ does not embrace contracts between private individuals, nor contracts “ of every description, but only those by, or under, which private corpor- “ ations, parties to such contracts, become legally bound to a parish, or “ to a municipal corporation, in reference to the paving, repairing, re- “ constructing, or care of any street, highway, bridge, culvert, levee, “canal, ditch, or crossing, belonging to, or under the control of, such “ municipal corporation. The prompt discharge of the duties imposed “ by contracts of that character is of importance to the public. Indeed “ the refusal to meet the obligations imposed by such contracts often “ endangers both the health and safety of the people. Delay in such “ matters may seriously imperil the interests of the entire community. “ An action at law to recover damages for a failure or refusal of the “ defaulting corporation to do what its contract obliges it to do might “ prove to be inadequate for the protection of those interests. What the “Act of 1888 does, is to give a parish or municipal corporate u an ad- *1578 “ ditional and more summary remedy for the enforcement of the obli- “ gation of any contract relating to the paving, reconstructing, repair- “ ing, or care of its streets, highways, bridges, culverts, levees, canals, “ ditches, or crossings,” etc.
We are of opinion that the purpose and effect of the statute under consideration is correctly set forth in the foregoing excerpt, and we find it unnecessary to add anything to the language used. In the cases decided by this court, and reported in the 44th Ann., pp. 64 and 1026, to which we are referred by the counsel for the defendant, it was found, that there was a lack of certainty as to the obligations sought to be enforced, and (in the ease reported at page 1026) that notice;, as required by the contract, had not been given. And, hence, it was held that the writ of mandamus ought not to be allowed. In so far as these opinions, or either of them, are susceptible of a construction at variance with the doctrine established in the earlier cases (reported in the 42nd Ann., and hereinbefore cited) that Act 133 of 1888 gives to municipal corporations an additional and more summary remedy than had previously been afforded in the cases eontemjplated in the act, they can not be sustained.
IY.
The city made no demand, as far as we are informed, upon the defendant, to keep in order, during the five years covered by the paving contract, that portion of St. Charles avenue to which this suit relates; and we infer from the evidence, that it made none on the Gravel Company, so that, at the expiration of the period mentioned, the pavement not having been maintained, was in bad condition. The defendant is hardly to be blamed for not interfering, during that time, between the city! and the Gravel Company; for, whilst it had not been released from its obligation in the premises, it had been given to understand, by the paving contract, that, for the time being, and unless otherwise notified, the city would have the avenue kept in order by the company, but, the five years having expired, and the company being eliminated, that duty now devolves upon the defendant, alone, and it professes itself, and no doubt is, ready to discharge it. It claims, however, that the condition of the pavement has, in the meanwhile, become so bad as to be, to a great extent, beyond repair, and that the work demanded is “reconstruction”, and will be very extensive and costly, and that it should not *1579 be required, to do it. Testimony has been taken upon this subject, an analysis of which is unnecessary. Some of the witnesses characterize some of the work as reconstruction, and others as repair. We are of the opinion that it is both, and that the question is immaterial to the case.
The obligation of the defendant, as it is defined in its contract, is to maintain the paving work "in thorough order, up to grade, smooth and solid, on the notification and to the satisfaction of the Commissioner of Public Works”, and to keep St. Charles avenue, from Lee Circle to Madison street, “includipig crossings, bridges, culverts, and intersections, in good order and condition at all times”; and, to comply with this obligation will, no doubt, at times, require work and new material, which, taken together, might be called reconstruction, and yet the defendant would be bound to do it in order to comply with its contract and to keep the avenue in order. The defense is not, therefore, well established in that aspect of the case, though it would be sound if the defendant were called on to build a road or lay a pavement where none had previously existed. Regarded from the point of view of the amount and expense of the work, it is, however, entitled to serious consideration., It was through no fault of the defendant that the paving was not maintained in good order, during the five years covered by the Gravel Company’s contract, and the relator has no right to impose upon the defendant the penalty resulting from its own laches, or that of the said company. It can readily be understood that property of any kind can be kept in repair at less expense, by means of timely attention, than if allowed to fall into extreme dilapidation and overhauled only at long intervals; and so, no doubt, with a thoroughfare, such as St. Charles avenue. In fact, this seems to be admitted by the learned counsel for the city, who says, in his brief, referring to the testimony of the City Engineer, to the effect that the cost of the work here demanded would amount to $12,000; “he further says that it would have been much less, “ if the street had been regularly attended to.” From which it follows, that the relator is seeking to impose upon the defendant, a burden of expense heavier than it would have been called upon to bear if the street had been regularly attended to; although it was the fault of the city and the Gravel Company, and not the fault of the defendant that such regular attention was not given. Eo'r, conceding, as we have done, that both the defendant and the Gravel Company were bound, if called *1580 upon by the city, to maintain the street in good order, the distinct announcement was made, in the paving contract, that the call was upon the Gravel Company, and that the defendant would not be expected to do anything for five years after the completion of the work under that contract, and, so far as appears, nothing ever was said or done, until the defendant’s'president called the attention of the Mayor to the matter, in June, 1898. This being the case, and the street, which the defendant agreed to keep in order, having, by the action and inaction of the city, and the Gravel Company, been reduced to a condition of extraordinary disorder, the putting of it in the order in which it is to be kept is outside of the defendant’s contract. The case would not be very different if the city had deliberately dug ditches and holes in the street, and were to demand that they should be filled by the defendant under its contract to keep the street in order. If it were shown, or admitted, that the cost of the work, which the city now demands, would not exceed the aggregate amount which the defendant would have had to pay in order to comply with its obligation of -maintenance, as contemplated by its contract, the mandamus prayed for might issue and no injustice be done; for the city can not be held to have presented that amount to the defendant. But, as the probability is that the cost of such work would be greater than such aggregate, and as neither the form of the action nor the evidence adduced enable the court to distinguish between what the defendant ought to do, and pay, and what there is no authority for requiring of it, we are of opinion that the writ was properly refused, and that the judgment appealed from should be affirmed, without prejudice to any right which the relator may have to claim of the defendant, by way of reimbursement, pro tanto, of the expense of putting the avenue in good order, such an amount as it may be able to show that the defendant would have [been obliged to expend from the date of the laying of the gravel pavement if said avenue had, thereafter, been kept in good order by it, exclusively and uninterruptedly, as contemplated by its contract of August 7, 1882, and October 13, 1892. With the reservation stated, the judgment appealed from is, therefore, affirmed at the cost of the appellant.