## CITY OF SEDALIA ex rel. TAYLOR, Appellant, v. DAVID H. SMITH.

### Division One, July 13, 1907.

1. **ORDINANCE: Doubtful Meaning: Construction.** If an ordinance is susceptible of two constructions it must be given that construction which will uphold its validity.

2. ———: ———: ———: **Title.** Where there is doubt as to the meaning of an ordinance, as, for instance, whether it is drawn in pursuance to a section of a statute which provides for the grading and paving of a street at the expense of the property-holder, or under another section which provides that the cost of the grading and paving shall be paid out of the city's general revenue, resort may be had to the title to clear away the doubt.

3. ———: ———: ———: **Extrinsic Evidence.** Where the question is whether the council had in contemplation the grading of a street as contemplated by section 109 of the Act of 1893, or the grading as contemplated in clause five of section 108, and doubt exists as to which was had in contemplation, resort may be had to extrinsic facts and means of explanation, to find out the real meaning of the council. Such allowable extrinsic aids include public documents and papers, ordinances *in pari materia*, journals, the petition of the property-owners speaking only of "paving," notice to the contractors speaking of "grading and paving," the estimates of the engineer for "paving" or for "paving and grading" filed in the proceeding, the profile of the street and grading made by the engineer, and the reference of the ordinance itself to another ordinance which had established the grade of the street.

4. **TAXBILL: Paving and Grading Street: Cost of Grading.** The grade of the street had already been established and the ordinance provided for its paving practically on the existing grade, except that it required six inches of earth to be removed to make room for the material to be put down. The facts are reviewed and it is *held* that the council had in contemplation the grading referred to in the fifth clause of section 108 of the Act of 1893, and not that contemplated by section 109, which requires a publication in a newspaper of a description of the grading to be made, where the cost is to be paid by the property-owners, and not out of the city's revenue, and, therefore, the taxbill is not void because that publication was not made and the work was not otherwise done under the provisions of section 109. [Disapproving City of Sedalia to use v. Abell, 103 Mo. App. 431.]

5. ———: **Time.** A contract which requires the public work to be completed within one hundred days, and fixes a penalty for each and every day the work is not completed within that time, fixes only a conditional time for finishing the work, and if it is not completed within the 100 days the taxbills are not void.

6. ———: **Repairs.** A provision that the contractor shall keep the paving in repair for five years does not render the taxbills void.

Appeal from Pettis Circuit Court.—*Hon. George F. Longan*, Judge.

REVERSED AND REMANDED.

*Charles E. Yeater* and *Scarritt, Scarritt & Jones* for appellant.

*John Cashman* and *Barnett & Barnett* for respondent.

(1) The taxbills sued on are void because the ordinance and all the other proceedings in this case provide that the street in question shall be brought to the established grade and paved, and because the city council did not declare by ordinance or otherwise that in their judgment or opinion the general revenue fund of the city was not in a condition to warrant an expenditure therefrom for bringing the street to the estab-

lished grade. Both the resolution and the ordinance, as well as the bid for doing the work, provide for the bringing of the street to the established grade and paving the same, yet the cost of bringing to grade is included in the ordinance and is taxed against the abutting property-owners without any finding or declaration that the city revenue was not in a condition to warrant such an expenditure. Without such declaration and expression of opinion on the part of the council the taxbill is void. City of Sedalia v. Abell, 103 Mo. App. 431; Wheeler v. Poplar Bluff, 149 Mo. 36; Kolkmeyer & Co. v. City of Jefferson, 75 Mo. App. 678; Poplar Bluff v. Hoag, 62 Mo. App. 672; Carthage v. Bagley, 73 Mo. App. 123; Knopfli v. Roofing & Paving Co., 92 Mo. App. 291; Galbreath v. Newton, 30 Mo. App. 380. (2) When special powers are conferred, or where special method is prescribed for the exercise and execution of a power, this brings the exercise of such power within the provision of the maxim *expressio unius, exclusio alterius,* and by necessary implication forbids and renders nugatory the doing of the thing specified, except in the particular way pointed out. Kolkmeyer & Co. v. City of Jefferson, 75 Mo. App. 683; Heidelberg v. St. Francois Co., 100 Mo. 74; City to use v. Eddy, 123 Mo. 558; Globe Furn. Co. v. District 7, 51 Mo. App. 551; City of Unionville v. Martin, 95 Mo. App. 28. In the case last cited the court cites, it would appear, all the Missouri cases on this question.

GRAVES, J.—This is an action upon a special taxbill issued for improving a portion of Fourth street in the city of Sedalia, the improved portion being from the west line of Thomson avenue to the east line of Park avenue. It is one of a number of cases growing out of the refusal of the property-owners on said portion of Fourth street to pay the special taxbills issued to improve the street. The cases, therefore, are but

slightly different in the essential facts, as well as in law, and three of them were argued here together. Another had previously gone to the Kansas City Court of Appeals. [City of Sedalia to use v. Abell, 103 Mo. App. 431.] In the Abell case the Court of Appeals at first simply reversed the judgment of the lower court, which was for the plaintiff. Afterwards, the opinion was so modified as to reverse the judgment and remand the cause for new trial. Much of the history of this case can therefore be gathered from the facts in the opinion of that case. After the adverse ruling of the Court of Appeals in that case, the plaintiff injected a constitutional question into this case, and for that reason we are to determine the validity of a very small taxbill. The ingenuity of able counsel seems to know no bounds, and through such ingenuity, lawfully exercised, however, as in this case, we are the unwilling servants to settle many extremely small suits. But constitutional questions must be settled when properly raised, and can be settled in a little as well as a big case, if we are able to find the said constitutional question.

The city of Sedalia is a city of the third class and the law governing it at the time involved in this action were the acts of 1893, approved April 19, 1893 (Laws 1893, pp. 65, et seq.) The sections applicable to this case are 108, 109 and 110. Section 108, among other things, provides:

"The cities coming under the provisions of this act, in their corporate capacities, are authorized and empowered to enact ordinances for the following purposes and upon the conditions in this section specified, in addition to the other powers granted by law: . . .

"Second. To open and improve streets, avenues, alleys and other highways, and to make sidewalks and build bridges, culverts and sewers within the city, and to exercise exclusive control over streets and alleys, and establish grades therefor.

"Third. The cost of bringing to grade all streets, avenues and alleys and other highways, and for the building of bridges and culverts and public sewers and foot-walks across streets, avenues, alleys and other highways, may be paid out of the general revenue fund of the city, or an assessment shall be made therefor on all the taxable property within the limits of the city, not exceeding five mills on the dollar for these purposes in any one year. . . .

"Fifth. The cost of paving, macadamizing, guttering and curbing (where such curb is set out into the streets beyond the sidewalks) all streets, avenues, alleys and other highways, or any part thereof or any connection therewith, and repairing the same, and for doing all excavating and grading necessary for the same (after said streets, avenues, alleys and other highways, or parts thereof or connections therewith, have been first brought to grade, as hereinbefore provided), shall be levied as a special assessment upon all lots and pieces of ground upon either side of such street, avenue, alley or other highway, or part thereof or connection therewith, abutting thereon, along the distance improved, in proportion to the front foot."

By clause ninth of said section, the special taxbills issued in payment of work done "shall, in any action thereon, be prima-facie evidence of the regularity of the proceedings for such special assessment, of the validity of the bill, of the doing of the work and of the furnishing of the materials charged for, and of the liability of the property to the charge stated in the bill."

Section 109 is as follows:

"The city council may, by ordinance, include in the special assessment the cost of bringing to the established grade any street, avenue, alley or other highway or square or area formed by the intersection or meeting of streets or other highways, or part thereof, proposed

to be improved as herein provided, when in its judgment or opinion the general revenue fund of the city is not in condition to warrant an expenditure therefrom for bringing the same to the established grade: Provided, that the resolution declaring such work necessary to be done, and published in some newspaper published in the city, shall, in addition to the other work of improvement therein provided for, include and describe the work of bringing such street, avenue, alley or other highway, or square, or part thereof, to the established grade. In all such cases where such work is authorized by virtue of such a resolution, and is contracted for in pursuance thereof, the bringing to grade as above described shall be included in the same contract with the other work provided for therein and taxbills shall be issued in payment for all said work as may be provided for by ordinance.''

Section 110 simply provides the proceedings to be followed in having public work upon the street done, and it is unnecessary to set it out in full here.

The petition is a usual one upon a special taxbill. The answer admits the ownership of the lot against which judgment lien is sought, but avers that the taxbill and all proceedings and contracts in relation to the public work out of which it grew are void. These will be noticed in course of the opinion. The answer also contained a general denial. The reply pleaded much new matter in which is the alleged constitutional question, by reason of which the case is here for determination. But such of these matters as are necessary will be noticed in the course of the opinion.

Plaintiffs introduced the taxbill and rested their case. This taxbill was for paving the above-named street and was in the sum of $166.57 and described the lot owned by defendant. Defendant thereupon introduced the resolution and ordinance passed by the city council, together with all the proceedings had with ref-

erence to this work, including the published notice and the contract. He also introduced evidence for the purpose of showing that the work was not done within time, this being one of the special defenses.

Plaintiff then offered evidence in support of the matters set up in the reply, some of which was admitted and much excluded. All these matters can be more properly noted in the course of the opinion and will be noticed in so far as necessary for a determination of the case. For the present the above sufficiently states the case.

I.    Defendant contends that the proceedings in this case are under section 109 of the Act of 1893, supra, and are void and ineffective, and the taxbill issued thereon is invalid, for the reason that the proceedings fail to show that, in the judgment of the council, the general revenue fund was in a condition not to warrant an expenditure therefrom to bring the street to an established grade, and because no resolution was passed and published declaring said work was necessary to be done, and describing the work to bring the street to the established grade. If the work intended to be done was in fact the work contemplated by section 109, the record does show these failures.

Plaintiff contends that the proceeding is one under section 108, and that the proceedings sufficiently comply with the law so as to validate the taxbill issued thereunder. In the Abell case, supra, the Kansas City Court of Appeals took the view contended for by defendant. To determine this question, the record of the proceedings will have to be closely scanned, and this we now proceed to do. The taxbill is for paving alone, and not for bringing the street to an established grade and paving the same. The taxbill is such as should have been issued under section 108, and not one as should have been issued under section 109. The first step was a resolution in these words:

"Be it resolved by the council of the city of Sedalia, Missouri, as follows, to-wit:

"That we deem and declare it necessary that Fourth street be brought to the established grade and paved from the west line of Thomson avenue to the east line of Park avenue, and that this resolution be published in the paper doing the city printing for two consecutive weeks by fourteen consecutive insertions."

This resolution was duly published. The date of resolution was April 8, 1895, and first publication, April 12, 1895.

At the meeting of the city council on April 8, the meeting at which this resolution was adopted, there appears upon the records of the meeting the following:

"Mr. H. W. Meuschke read a petition asking the council to pave Fourth street, from Thomson avenue to Park avenue."

At the meeting of April 15, the minutes of April 8, with the matters above set out, were read and approved. Following this is Ordinance No. 50, authorizing the work, which was passed July 1st, 1895, and approved July 2, 1895. The title reads:

"An ordinance providing for the grading and paving of Fourth street from the west line of Thomson avenue to the east line of Park avenue."

Section 1, in so far as is necessary for our consideration, is thus: "That all that part of Fourth street between the west line of Thomson avenue and the east line of Park avenue be brought to the established grade and paved according to the specifications herein contained, and for the purposes hereof, the curb lines hereby established and the lines on which the curbs shall be set shall,"—here follows the fixing and establishing of the curb line upon each side of the street. Then follow the specifications for the work in this language:

206 Sup—23

## "*Specifications for Grading.*

"The space between the curb lines shall be excavated or filled, as may be necessary, so as to be brought to a depth below the established grade, the thickness of the pavement hereinafter provided for at the center line of said street, and six inches further below the same at the curb lines, so as to have a crown of six inches in said grading, where said paving is to be thirty feet wide, and where the same is forty feet wide, the said grading shall be to the depth of eight inches below grade at the curb, so as to give said work a crown of eight inches.

"Provided that on each side of the intersection of Ohio avenue the present elevation of the paving on said Ohio avenue shall be taken as the grade for said intersection, and the grade shall gradually slope from the same on a plane to line of Lamine and Osage avenues, respectively, and Ohio avenue being now paved, there shall nothing be done with the intersection of the same and said Fourth street under this ordinance.

"All the earth and materials taken shall be removed and either used for filling where the same may be necessary, or entirely taken away, and said street shall be thoroughly rolled before any paving material is put thereon, and the grading shall always be at least one square in advance of the paving.

"The contractor shall use due care not to injure such curbing as may be set before the street is excavated, and he shall be held responsible for any damage done by him or his employees to said curbing during construction of the street.

"At the intersection of other streets not paved, the street to be paved hereunder shall be graded and paved to full width of the street, and the grading shall be to suit the paving hereinafter provided for, and also with sufficient depressions at the extensions of the curb lines to allow the flow of water across said street, the amount

and dimensions of said depressions to be determined by the city engineer.

"Said paving of intersections shall be so as to provide for a roadway or paved street on the cross streets of thirty feet wide on all streets except Lamine and Osage avenues, and there it shall provide for a roadway of forty feet wide.

### "Concrete Base.

"Upon the surface thus formed will be laid a bed of hydraulic cement concrete six inches thick, made as follows:"

Here follows a minute detail of the work required for the base upon which the asphalt of wearing surface should be laid, as also a minute detail as to the asphalt itself.

Section 2 of the ordinance provides that the work shall be completed within 100 days after contract is let, and further provides for a forfeit of $20 per day for each day over the 100 days, to be deducted from the amount due the contractor, and such forfeit money thus deducted from the taxbills proportionately. The section also provides for an extension of time upon application. The bond is fixed by this section and the term "grade" is thus defined therein:

"The term grade or established grade used herein shall be understood to mean the grade established by the revised ordinances of Sedalia, of 1894, and the same shall govern except as in this ordinance otherwise provided."

Sections 3, 4 and 5 are as follows:

"Section 3. Otherwise than as herein provided the contract for said work shall be let and said work done in strict accordance with article 1 of chapter 27 of the revised ordinances of this city, of the year 1894, and nothing herein shall be construed as a repeal of any of the provisions of said article.

"Sec. 4. An ordinance entitled 'An ordinance providing for the grading and paving of Fourth street from the west line of Thomson avenue to the east line of Park avenue' approved June 17th, 1895, is hereby repealed. And the ordinance of the same title, approved June 19, 1895, is also hereby repealed.

"Sec. 5. This ordinance shall take effect and be in force from and after its passage."

The notice to contractors is in this language:

## "Notice to Paving Contractors.

"Notice is hereby given, that the city council of the city of Sedalia, Missouri, will receive and consider bids or proposals for the grading and paving of Fourth street, from the west line of Thomson avenue to the east line of Park avenue, as provided for by an ordinance of said city, entitled 'An ordinance providing for the grading and paving of Fourth street, from the west line of Thomson avenue to the east line of Park avenue;' passed July 1, 1895, and approved July 2, 1895.

"All bids shall be based on the specifications, and conform to the provisions and requirements of said ordinance, and shall be filed in the office of the city clerk not later than five o'clock p. m. on the 15th day of July, 1895, and shall be sealed.

"The council reserves the right to reject any and all bids."

Then follows the contract, which among other things, contains the following:

"Whereas, the said S. H. Taylor was and is the lowest and best bidder for the grading and paving of Fourth street, in said city of Sedalia, under and in pursuance of the ordinance passed by the council of said city and approved by the mayor thereof on the 2nd day of July, 1895, entitled, 'An ordinance providing for the grading and paving of Fourth street from the west line

of Thomson avenue to the east line of Park avenue,'
and the contract to do all the work provided for in said
ordinance has been duly awarded to said S. H. Taylor
by the council of said city; now the said S. H. Taylor,
as principal, and the other above-named, his sureties,
are hereby held and firmly bound unto said city of Se-
dalia in the penal sum of fifty thousand dollars, for the
payment of which we bind ourselves, our heirs, execu-
tors and administrators and to be void on this condi-
tion, to-wit: That the said S. H. Taylor shall well and
truly do all the grading and paving required and pro-
vided for in the above-named ordinance and furnish all
material for the same, and in the doing thereof, will
abide by that ordinance and all ordinances of said city
pertaining to and regulating such work and the doing
thereof, and the guarding and protecting from acci-
dents and damages, etc., and will do said work under
the supervision of the city engineer, as provided for in
said ordinances, and within the time in said ordinance
of July 2, 1895, mentioned, and in all things will per-
form said work according to said ordinances, then this
obligation shall be void, otherwise to remain in full
force.''

The bid of Taylor, upon which the foregoing con-
tract was let, was in language, as follows:

"Sedalia, Mo., July 15, 1895.
''To the Mayor and City Council, Sedalia, Mo.:

''I hereby propose to bring to the established
grade and pave Fourth street from the west line of
Thomson avenue, to the east line of Park avenue, ac-
cording to the specifications applying to said work, for
the sum of one dollar and sixty-five cents per square
yard, and I propose to use the following materials in
said paving: Trinidad Asphalt and Louisville or Mil-
waukee cement.''

The city engineer seems to have made two estimates as to the cost. In amount they are the same. One says "for paving" and the other says "for bringing to a grade and paving." We set them out in full, as they may lend some light. They are:

"Sedalia, Mo., June 19, 1895.

"Estimate for paving of Fourth street from Thomson avenue to Park avenue:

Excavating and grading per square yard........$ .10
Concrete base per square yard.................. .50
Asphalt, per square yard...................... 1.00
Profit ................................. ........ .40

Total cost, per square yard.................$2.00

"Richard Morey, City Engineer.

"Filed June 19, 1895, City Clerk of Sedalia, Mo."

"July 1, 1895.

"Estimate for bringing to grade and paving Fourth street from the west line of Thomson avenue, to the east line of Park avenue.

Grading and excavating, per square yard ......$ .10
Concrete base, per square yard................. .70
Asphalt, per square yard...................... 1.00
Profit per square yard....................... .20

$2.00

"Richard Morey, City Engineer.

"Filed July 1, 1895, City Clerk of Sedalia, Mo."

The ordinance establishing the grade on Fourth street was introduced, as was also the profile of such grade. This profile was submitted to the city engineer, who testified as a witness, and as to the difference between the grade as established, and the natural surface of the street, the following from his testimony is of interest:

"I will ask you from an engineering standpoint, how near the grade marked there, and the surface of the street correspond? A. The grade marked shows to have been made to conform to the surface of the street as nearly as any two such marks could."

It should be borne in mind that the ordinance establishing the grade was passed long prior to the ordinance in question in this case. The profile as well as the oral testimony shows that the grade established was practically the surface of the street.

At a meeting of the council of date May 6th, the following appears of record:

"A remonstrance protesting against the paving of Fourth street was read.

"On motion of Berry duly seconded and carried, the remonstrance was referred to the city engineer for investigation."

And in the record of a meeting held May 13th, the following:

"The city engineer reported that a majority of property-owners had not remonstrated against the *paving* of Fourth street from the west line of Thomson avenue to the east line of Park avenue.

"On motion of Dugan, duly seconded and carried, the property-owners were given until the next regular meeting of the council to determine the kind of material with which they wanted the street paved."

The petition of the property-owners speaks thus:

"Gentlemen — The undersigned property-owners on the street herein named respectfully ask that you cause to be *paved* that part of Fourth street in said city from Thomson avenue to Park avenue, the work not to begin before April first, A. D. 1895."

The language of the document whereby the property-owners selected the material to be used, is thus:

"We, who are residents on Fourth street, in the city of Sedalia, and who have petitioned the city coun-

cil to *pave* said street, hereby desire to signify to the council that we want said *paving* on a 6-inch concrete base and the character of paving as indicated opposite our respective names:'' In all instances the italics are ours.

The defendant, Smith, signed neither of the two last-mentioned instruments.

We have set these things out fully as the side lights from which the terms of this ordinance and the meaning thereof may be reached, if it be such an instrument as may receive a construction by such means.

To our mind the real issue in this case is the meaning of this Ordinance No. 50 and by what rules we are to construe it. In other words, is it an ordinance under section 108 or rather clause five of sec. 108 of the Act of 1893, or is it an ordinance under section 109 of said act. The title is clearly under section 108. The first part of section 1, which we have quoted, by use of the words, "be brought to the established grade and paved," if we take these words alone, would tend to indicate a legislative purpose under section 109. But on the other hand we find the above words followed by the words "according to specifications herein contained" so that the whole clause reads, "be brought to the established grade and paved according to the specifications herein contained." Now when we read the specifications for grading contained in the same section, it is not so clear. This provides for the reduction of the street to a plane, the thickness of the pavement below the established grade, which is contemplated by the fifth clause of section 108, supra, wherein is said "and for doing all excavating and grading necessary for the same."

If this section one, of Ordinance No. 50, and the ordinance as a whole, by these ambiguous terms and clauses, leave doubt as to the meaning, then we are at liberty to go beyond the body of the act itself for light

when we come to construe it.  There is doubt as to the
meaning of this ordinance.  There is doubt as to wheth-
er the intention of the lawmakers was to enact an ordi-
nance under section 108, or rather under clause five
thereof, or under section 109 of the Act of 1893.  As
an aid to construction, and a very strong aid, too, is
the title of the ordinance.  In Dart v. Bagley, 110 Mo.
l. c. 51, we said:

"There are many canons of construction, but they
all rest upon the common principle that if possible the
intention of the Legislature must be ascertained.  These
rules are only valuable when they subserve this pur-
pose.  One of these rules of construction, long estab-
lished in England, was that 'the title cannot be resorted
to in construing the enactment.'  [Hunter v. Nockolds,
1 McN. & Gord. 651.]  But in this State and others,
where the Constitution gives a peculiar significance
and assigns particular importance to the title by re-
quiring that a statute shall contain but one subject
'which shall be clearly expressed in its title,' this com-
mon law canon is clearly at variance with our methods
of interpretation.  On the contrary, we hold that the
title is necessarily a part of the statute and aids in,
and is a necessary guide to, its right construction.
[Endlich on Interpretation of Statutes, secs. 58, 59,
and cases cited.]

"So it was said in Conn. Mut. Life Ins. Co. v. Al-
bert, 39 Mo. 181: 'But the better rule, as we think,
is to presume that the true intent and meaning is to
be found in the title, unless it is plainly contradicted
by the express terms of the body of the act.' "

Sutherland on Statutory Construction (2 Ed.), vol.
2, sec. 339, states the rule thus:

"The same declaration, that the title is no part
of the act, has been frequently made by judges in this
country.  But in modern practice the title is adopted
by the Legislature, more thoroughly read than the act

itself, and in many States is the subject of constitutional regulation. It is not an enacting part, but is in some sort a part of the act, though only a formal part. By the common law it could not control the plain words of a statute; it was resorted to only in cases of doubt for such aid as it could afford in removing ambiguities. Acts may be identified by the title. An act may have effect as to persons and subjects broader than the title where the words are plain, and where there is no constitutional barrier. But if the meaning is doubtful, the title, if expressive, may have the effect to resolve the doubts by extension of the purview, or by restraining it, or to correct an obvious error; for in ascertaining the intention nothing is to be rejected from which aid can be derived.; therefore, the title of an act may claim a degree of notice, and is entitled to its share of consideration. Where the text of the statute is plain and unambiguous, the title cannot have the effect to modify it.''

See, also, Black on Interpretation of Laws, section 76, page 171, where it is said: ''The earlier English doctrine on this point never gained any considerable recognition in this country. On the contrary, with us, it has been almost universally held that if the provisions contained in the body of the statute are expressed in ambiguous or doubtful language, or so as to be fairly susceptible of more than one interpretation, then it is permissible and proper to consider the title of the act, as a clue or guide to the intention and meaning of the Legislature, and in this manner and to this extent it may be allowed to aid in the construction of the law.''

This Dart case, supra, was a statute, it is true, but the construction of an ordinance is for the court and the rules of construction of statutes usually apply to the construction of ordinances. [McQuillin on Municipal Ordinances, sec. 289, and cases cited.]

And if the ordinance is susceptible of two constructions it must be given that construction which will uphold the validity of the ordinance. The doctrine is thus announced by the Supreme Court of Kansas, Swift v. Topeka, 43 Kan. 671, 23 Pac. 1075: "But if a statute or a city ordinance is susceptible of two different constructions, that one must prevail that will preserve the validity of the ordinance, in preference to a construction that will render it invalid; and this must be done although the construction adopted may not be the most obvious or natural one, or the literal one. [Newland v. Marsh, 19 Ill. 376; Homestead Co. v. Webster Co., 21 Iowa 221; Roosevelt v. Godard, 52 Barb. 533; Colwell v. Water-Power Co., 19 N. J. Eq. 245; Bigelow v. Railroad, 27 Wis. 478; Dow v. Norris, 4 N. H. 17; Cooley, Const. Lim., 184; Inkster v. Carver, 16 Mich. 484.]"

Again all doubts must be resolved in favor of the validity of the ordinance. [Stafford v. Railroad, 110 Wis. 331.] The burden rests with the party alleging the invalidity of the ordinance to demonstrate it, there being in all cases the presumption that the ordinance is valid. [Railroad v. Carlinville, 103 Ill. App. 251.]

One other rule in the construction of laws and ordinances is that they must be construed in connection with existing laws and ordinances. In this case, we had section 160 of the Revised Ordinances of 1894, fixing the established grade of Fourth street. This section is specifically referred to in Ordinance No. 50. The profile of the grade established under section 160 was in evidence, as well as the ordinance itself. This profile, as interpreted by the engineer, shows in effect that the established grade and the natural surface of the street were practically the same. With this in view is it reasonable to suppose that the city council, in passing Ordinance No. 50, contemplated grading as mentioned in section 109 of the Act of 1893? We think

not. Here was a previous ordinance fixing this established grade. Here is an established grade practically conforming to the contour of the surface. The council is presumed to know the conditions and the existence of the previous ordinance, and in this case that they had this knowledge is apparent, because they referred to the previous ordinance of 1894, in reference to established grade. This ordinance of 1894, under these circumstances, being mentioned in the ordinance itself, must be considered as intrinsic aid for the construction of the ordinance in question.

But aside from that, we have, and may call upon, what are called extrinsic aids in determining a doubtful meaning. The rule is thus stated by Black in his Interpretation of Laws, pp. 196-7:

"But if the words of the law are not intelligible, if there arises a substantial doubt as to their meaning or application, or if there is ambiguity on the face of the statute, then the endeavor must be made to ascertain the true meaning and intent of the Legislature. And to this end, first of all, the intrinsic aids for the interpretation of the statute are to be resorted to. It should be read and construed as a whole; its various parts should be compared; each doubtful word or phrase is to be read in the light of the context; the interpretation clause, if there is any, should be examined to see if it defines or explains the ambiguous part; and light may be sought from the title of the act, the preamble, and even the headings of the chapters and sections.

"But if these intrinsic aids are exhausted without success, if there still remains a substantial doubt or ambiguity, then recourse may be had to extraneous facts, considerations, and means of explanation, always with the same object, to find out the real meaning of the Legislature."

These allowable extrinsic aids are numerous and

varied, including public documents and papers, statutes *in pari materia,* contemporary history, contemporary construction and usage, executive and legislative construction, journals of the legislative body, opinions of legislators, motives of the legislative body and perhaps others.  Now reviewing some of these aids, the petition of the property-owners for this ordinance only speaks of paving; the notice is one to "paving contractors" and speaks of "grading and paving" Fourth street, but it must be remembered that certain grading must be done before paving, even where the street is at the established grade; the ordinance establishing the grade, with the profile of the established grade, shows that the street was on the established grade, or practically so; the two estimates filed by the engineer, public documents in the proceeding, one for "paving" and the other for "bringing to grade and paving" Fourth street, are the same in amount; the contract denominates the work to be done as "grading and paving" Fourth street; then above all is the fact that no substantial work was required to bring the street to the established grade — it was on such grade to all intents and purposes.

Under all these circumstances does the ordinance challenged mean the grading contemplated by section 109, or does it mean the grading contemplated in clause five of section 108, of the Act of 1895.  We are inclined to think the council had in view the latter; that they aimed to proceed throughout under the provisions of section 108, and the provisions of clause five aforesaid.  They could not have meant the grading necessary to bring a street to the established grade, when nature had done that, but must have meant the necessary grading required for the proper laying of the pavement.  This is our construction of this ordinance and it is a reasonable construction thereof.  The only serious question in the matter is whether we should

have gone outside of the ordinance, which of course we could not, unless the meaning of the ordinance is doubtful. We think, as hereinabove indicated, that when you compare the first few lines of section 1, of Ordinance No. 50, with the remaining portions thereof, there is doubt as to the character of grading contemplated, and upon that theory we have proceeded. Where there is doubt, SMITH, P. J., in Bank v. Haywood, 62 Mo. App. l. c. 555, has most admirably stated the rule in this language: "The rule is, that in order to ascertain the purpose or intention of a statute, if not clearly expressed, it should be read in view of all the surrounding facts and circumstances under which it was enacted. This rule is to be invoked alike in the construction of statutes and contracts. [Citing cases.] In Potter's Dwarris on Statutes and Constitutions, page 48, it is said that common sense and good faith are the leading and principal characteristics of all interpretation. Reading the said ordinance in the light of the facts and circumstances surrounding its passage, and to which we have heretofore adverted, we cannot conclude that it was the intention or purpose of the framers to require that part of said street covered by said railroad tracks to be improved."

From all of this it results that the trial court should have held that this whole proceeding was one under section 108, or rather clause 5 of section 108, of the Act of 1893. This the trial court did not do, but, evidently impelled by the ruling of the Kansas City Court of Appeals, in the Abell case, held the contrary. In this there was error. And in this, the Abell opinion, supra, is error.

II. The views which we have taken of this ordinance, and the construction we have given it in our paragraph one of this opinion, practically disposes of this case, with exception of the contention of defendant that the work was not completed within time and

therefore the taxbills are void, and the further contention that the ordinance has a provision for keeping the pavement in good repair for five years and for that reason is void. The provision in said ordinance as to time is in this language:

"The work under this ordinance shall be done and fully completed within 100 days after the contract is let, and each and every day that the said work is not completed within that time, the contractor shall forfeit the sum of twenty dollars, the same to be deducted from the amount that would otherwise be due him for all of said work, and the said deduction shall be apportioned to and along the whole of said street so improved under this ordinance, and taxbills for so much less shall be issued in payment therefor; provided that for good cause shown, the council may extend the time of completing said work if the contractor is not in any fault in the matter; and the application for extension is made as soon as the necessity therefor appears, and before the work is done. No extension shall be made or excuse received after the work is completed."

There is no definitely fixed time by the provision above quoted. This ordinance itself contemplates that more than 100 days might be required, for it provides for a forfeiture for each day required over that number. The contract is not different in this regard from the ordinance. We have recently reviewed the authorities upon this question in the recent case of Curtice v. Schmidt, 202 Mo. 703. Upon the authority of that case and the recent cases therein cited, this contention must be ruled against the defendant.

But in addition to this, the ordinance provides that the time, for good reason, might be extended. The contractor made application for extension, assigning as a reason that the curbing was not in, and the work could not proceed until it was in place. The council

on this showing did extend the time, by passing a resolution to the effect that the time to begin should be as of the date when the curbing was in place. This was equivalent to extending the time for such time as was required to get the curbing in position. However, all this is immaterial in this case, for the reason that neither the ordinances nor the contract fixes, in positive terms, any definite time. It only fixes a conditional time, the distinction being clearly drawn by BRACE, P. J., in Heman v. Gilliam, 171 Mo. 258, and other cases cited in the Curtice case, supra.

(2) Nor is the provision that the contractor shall keep the pavement in repair one which vitiates either the contract or ordinance.

III. We had about overlooked the constitutional question. It would be perhaps as well, had it been overlooked. There is nothing in it. The contention is that section 109, of the Act of 1893, section 5809, Revised Statutes 1899, is violative of section 1, article 14, amendments to the Constitution of the United States, and also section 3, article 10 of the Missouri Constitution. We do not think so. A reading of these constitutional provisions will suffice.

IV. To our mind, this record shows that no work was contemplated by the ordinance, save and except such as must, under all circumstances, be paid for by special assessment. In other words no work was contemplated, which could be paid out of the general revenue fund of the city. The work has been done. The property has received the benefits thereof. In the language of ELLIOTT, C. J., in case of Jackson v. Smith, 22 N. E. 432: "The assessment is made upon the theory that the benefit to the property is equivalent to the expense. The owner, therefore, receives a thing of value, and he ought in equity and good conscience, to pay for it, notwithstanding the fact that the local officers may not have obeyed the statute in every regard. It

is just to protect his title when he offers to pay for the things of value rendered him in the form of the benefit resulting from the improvement; but it is not just to relieve him from paying the assessment because the local officers have made mistakes.''

Without discussing other questions suggested in the briefs, it therefore follows that this cause should be reversed and remanded to be proceeded with as herein indicated, and it is so ordered.

All concur.

## ON MOTION FOR REHEARING.

GRAVES, J.—One of the things urged in the motion for rehearing is thus stated in paragraph five thereof: ''The court wholly overlooked the fact that the respondent offered to show that not alone did the proceedings provide for the bringing of the street to grade, but that the physical fact existed that deep cuts were made, and high fills built, upon which to place this pavement; and in no event should the court render an opinion that would preclude the respondent from offering such proof at a re-trial of this cause.''

The opinion of the court reverses and remands the cause. It was not the purpose of the court to preclude the introduction of the evidence above mentioned upon a re-trial. It may be that some of the language used would bear out the contention of counsel, and if so, this can be considered as a modification thereof. Upon the evidence in this record, we were of the opinion that in the passage of Ordinance No. 50, the council had in view and meant the grading contemplated in the fifth clause of section 108, Acts of 1893, in the opinion mentioned. What we hold is that the ordinance itself is of such doubtful meaning that we could resort to both intrinsic and extrinsic aid in construing it. Among

206 Sup—24

the extrinsic aids we mentioned the evidence of the city engineer as to the condition of the established grade as shown by the profile. On the other hand had it been in the record that the street was irregular in its surface, this fact would have been considered in construing the ordinance.

Upon a retrial it may appear that this street was of such a character that the council could not have meant any other grading except that contemplated by section 109, Act of 1893, and if so the trial court should have the benefit of that evidence in construing this ordinance. We are of opinion that such evidence would have been heard by the trial court under the original opinion and the order reversing and remanding the cause, but as there seems to be doubt, we add this to the original opinion to remove such doubt. With this the motion for rehearing will be overruled.

All concur.