CITY OF DANVILLE V. DANVILLE RAILWAY AND ELECTRIC
COMPANY.

January 16, 1913.

Absent, Whittle, J.

1. STREET RAILWAYS—*Paving Streets—Material to Be Used—"Good Order."*—Under a franchise to a street railway company, whereby it is required at all times to keep that portion of a city street between its rails and within two feet of the outside of said rails "in good order and repair," the city has the right to require the company to lay the same kind of pavement within the space to be paved by it as the city is laying on the same street outside of the space required to be paved by the company. The duty is a continuing one, and the franchise is accepted on that condition, and where the city has, for sufficient reasons, decided to have its streets paved with a particular kind of material, the railway company, in order to keep its part of the street 'in good order" must have it paved with like material. "In good repair" does not necessarily mean in good order. The street may be "in good repair" and yet not "in good order." To be "in good order" the paving must be of the same kind as that used by the city.

2. APPEAL AND ERROR—*Case Heard by Trial Judge—Reversed.*—Where a case is heard by the trial court, without the intervention of a jury, this court, on reversing the judgment of the trial court, will enter up judgment for the adverse party, as that is the judgment the trial court ought to have entered.

Error to a judgment of the Corporation Court of the city of Danville in an action of assumpsit. Judgment for the defendant. The plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*E. Walton Brown,* for the plaintiff in error.

*William Leigh,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This action of assumpsit was brought by the city of Danville to recover from the Danville Railway and Electric Company the cost of a bitulithic pavement laid on a portion of Main street in said city, between the defendant company's street railway tracks and for two feet outside of the said rails, at the same time that that portion of Main street was being paved by the city with like material, the defendant company having failed to pave between its tracks and for two feet on either side thereof, in accordance with the demand made upon it by the city.

The original franchise or ordinance under which the Danville Street Car Company, the predecessor of the defendant company, was permitted to construct its car lines on said street contained the following provision:

"Sixth.   The said Danville Street Car Company in constructing their tracks shall bear all the expense of taking up and replacing the pavement of the streets, and shall be bound always to keep the pavement between the rails of the tracks in good order and repair, at the expense of the street car company."

This ordinance, or franchise, which went into effect in the year 1886, was amended in the year 1899, and as amended contains the following provision:

"(9)   That as the work of constructing the said railway is completed the said Danville Street Car Company shall restore all pavements and re-grade all streets taken up or disturbed in said work, and, under the supervision of the city engineer, the said Danville Street Car Company shall, at all times, at its own expense and charge, keep so much

of the street upon which its railway is located as lies between the rails and within two feet of the outside of said rails in good order and repair, and upon the failure of said Danville Street Car Company so to re-pave, re-grade and keep in repair for ten days after being required so to do by the city engineer, the said city engineer may cause the work to be done at the expense of the Danville Street Car Company, and the expense thereof may be recovered of said company and shall be a lien upon said railway property."

When the street car tracks were placed upon Main street that portion of the street where the defendant company was required to pave with bitulithic pavement was paved with cobble stones. The cobble-stone pavement upon that portion of Main street had been laid for about twenty-four years and seems to have been in fairly good order and repair for that kind of pavement when the city determined in the year 1910 to replace it with a new, more expensive and modern pavement. The principal question, therefore, to be determined in this case is whether or not, under the ordinances quoted, the city had the right to require the defendant to lay between its tracks and two feet on either side thereof the same kind of pavement as that which the city was laying on that portion of Main street.

By section 6 of the original franchise the street car company was "bound always to keep the pavement between the rails of the tracks in good order and repair" at its own expense. By section 9 of the amended franchise the street car company was required "at all times, at its own expense and charge, (to) keep so much of the street upon which its railway is located as lies between the rails and within two feet of the outside of said rails in good order and repair." The duty imposed is not only to keep the street "in repair," but in good order, and that at all times. The duty must, therefore, be regarded as a continuing duty

lasting as long as the defendant operated its line upon the street. If its only duty under its franchise had been to keep that portion of the street in question in good repair, there would be force in its contention that it could not be required to lay a new pavement of a more costly character. But it is required by its franchise not only to keep that portion of the street in repair, but "in good order." "In good repair" does not necessarily mean in good order. The presumption is that those words, or that term, was intended to have some meaning and it must be given some effect. The portion of the street designated might be in good repair as a dirt road, or as cobble-stone pavement, and yet might be in bad order, plight or condition to bear the increased burdens and accommodate the travel of a modern city. The purposes for which streets are laid out and improved are well known, and the parties in granting and accepting the franchises must be considered as having that purpose in mind. This being so, it is neither unreasonable nor unjust to hold, as is said by Elliott on Roads and Streets (2nd ed.), sec. 774, that the company accepted its franchise under the implied condition that changes and improvements required by progress and growth would be made, for certainly neither the municipality nor the company can be presumed to have intended that no progress should be made nor any changes be required.

It was said in *Philadelphia, &c.* v. *Ridge Avenue, &c.*, 143 Pa. St. 444, 471-2, 22 Atl. 695, 699, that the proposition that "because cobble stone was the kind of pavement ordinarily in use when the defendant company was chartered, it is in no event bound to re-pave with any other and more expensive kind of material, etc., is wholly untenable. It cannot be entertained for a moment. It was never contemplated that the railway company would continue to exist and perform its corporate functions in a cobble-stone age. It was called into being with the view of progress. The

duties specified in its charter were imposed with reference
to the changes and improved methods of street paving
which experience might sanction as superior to and more
economical than old methods.   In other words, the com-
pany is bound to keep pace with the progress of the age in
which it continues to exercise its corporate functions."

Whether or not, if the obligation of the defendant com-
pany had been to keep that portion of the street used by
it in good repair merely at all times, it would have im-
posed upon it the duty of complying with the requirement
of the city, need not be considered, though as stated by
Elliott (sec. 774) it has been held with much reason that
where the ordinance provides that the company shall keep
the streets in perpetual repair it may be compelled to
repair or otherwise improve the streets.  For if any effect
is to be given to the further requirement of the franchise
that the company shall at all times keep that portion of
the track used by it "in good order" as well as in good
repair, it would seem sufficient to impose the obligation
to repair with a different and better material when in good
faith the city determines to lay the residue of the street
with such material.   See generally the case of *Washington
Southern Ry., &c.* v. *Alexandria,* 98 Va. 344, 36 S. E. 385.
Manifestly a street could not be regarded as in good order
within any reasonable use of that term if the middle or
one side of it was laid with cobble stones and the residue
with a smoother material better suited for travel, for the
result would be that the portion used by the company
would be of little or no value or service to the public.

It seems to us that the requirement of the franchise to
keep the street in good order and repair at all times im-
poses upon the company the duty to pave that portion of
Main street which lies between its rails and within two feet
on the outside with the same kind of material as the city
had, for sufficient reasons, decided to pave the street with

and with which it did pave it.  While the courts are not
in accord in the construction of similar or substantially
like provisions, the conclusion above stated is in harmony
with the opinion handed down to-day in *Norfolk, &c. Co.* v.
*City of Norfolk,* 115 Va. ——, and with the decisions of
courts of other jurisdictions, and is, we think, sustained
by the better reason.

It was held in *Mayor, &c.* v. *Harlem Bridge Co.* 186
N. Y. 304, 78 N. E. 1072, under a statute that provided
that the grantees of a franchise for the construction of a
street railway, or their successors, should keep the surface
of the street inside the rails and one foot outside thereof
in good and proper order and repair, and conform the
tracks to the grades of the streets or avenues as they now
are or may hereafter be changed by the authorities of the
town, that where the town authorities determined that the
street occupied by the tracks of the railway company
should be paved with a granite block pavement, the rail-
way's obligation to repair and keep the space between the
rails and one foot outside thereof in good order, required
the railway company to put the space between its rails
in the same condition as the rest of the street, though it
necessitated the laying of a new pavement, and prior to
that time the street had not been actually paved.  After
reviewing the cases in that State the court said:  "We,
therefore, regard it as settled in this State that the plain-
tiff was entitled to require of the defendant to lay in its
tracks granite pavement, and we find no difficulty in fol-
lowing such adjudications.  The question of what shall
constitute keeping a pavement in the tracks of a railroad
company in good order and repair is to be determined,
somewhat at least, by reference to existing and surround-
ing circumstances, and in our judgment it would be alto-
gether too narrow a view to hold that where a munici-
pality had for sufficient reason decided to pave a street

with asphalt or other new pavement, a railroad might discharge its obligations to keep its part of the street in good order and repair by merely patching up a dirt road or some species of pavement which had become antiquated and out of condition, and which was entirely different from that adopted in the remainder of the street."

In *Columbus, &c.,* v. *City of Columbus,* 43 Ind. App. 65, 86 N. E. 83, it was held that under an ordinance granting the right to construct and operate a street railway, which provided that the portion of the street between and adjacent to the tracks should be kept in as good repair, considering the nature of the use, as other parts of the street are kept by the city, those operating the railway must pave that portion when it becomes necessary to keep it in as good condition as the rest of the street is kept by the city. In that case it was said, that if the ordinance had "merely stipulated for the repair of the street" then the obligation to pave would not have been created; but that the agreement was not only to keep that portion of the street designated in good repair, but also to keep it in as good condition as other parts of the street are kept by the city; that the phrase "good repair" does not necessarily mean good condition. A dirt road might be in good repair and yet be in poor condition to bear the increased burden of a modern city. The presumption is that the word "condition" meant something, and it must be regarded. The purpose for which streets are established and improved is well known, and the parties must be considered as contracting in view of such purpose. The portion of the street designated might be in good repair as a gravelled street and yet very far from being in as good condition as the rest of the street in the city. It must be remembered "that such charter is to be strictly construed against the railway company, and that it has no doubtful rights under the charter, for where there are doubts they are construed against the grantee and in favor of the city."

It was held in *State, &c.,* v. *New Orleans, &c., Railroad Co.,* 52 La. Ann. 1570, 28 South. 111, "that the obligation to keep a street in good order necessarily involves repairs, and repairs may involve the use of new material, and this may be called reconstruction, but it is nevertheless included in the obligation to keep the street in good order."

The court is of opinion that the judgment complained of must be reversed, and, the whole matter of law and fact having been submitted to the decision of the trial court, this court will enter such judgment as that court ought to have entered in favor of the plaintiff city for the sum of $3,135, with interest thereon from September 10, 1910, and costs.

*Reversed.*