# GILFILLAN *et al* v. CITY OF BARTLESVILLE.

### No. 3706.    Opinion Filed May 11, 1915.

(148 Pac. 1012.)

1.  **MUNICIPAL CORPORATIONS—Local Improvements—Assessments—Property Benefitted.** Section 7, art. 10 (Williams' Sec. 272), of the Constitution expressly declares and thus, upon the principle of "expressio unius est exclusio alterius," limits to such declaration. the legislative power to levy and collect assessments for local improvements upon property benefited thereby.

    (a)  The authority here given is based upon the special and peculiar benefits accruing to such property, as contradistinguished from benefits accruing to. property in general or to the general public.

2.  **MUNICIPAL CORPORATIONS—Assessments—"Local Improvements."** The term, "local improvements," as used in section 7, art. 10 (Williams' Sec. 272), which declares the legislative power to authorize county and municipal corporations to levy and collect assessments therefor upon the property benefited thereby, enables the Legislature to authorize and, thereupon, such corporations to make such levy for any and all such improvements, subject to the requirements of the fourteenth amendment to the federal Constitution, without regard to any disinction between "improvements" and "repairs," which would limit the legislative power thus declared.

3.  **MUNICIPAL CORPORATIONS—Local Improvements—Bonds—Implied Guaranty.** The provisions in the act of April 17, 1908, (Sess. Laws 1907-08, c. 10, art. 1, Sec. 4; section 725, Comp. Laws 1909), that "the mayor and council may require a bond in an amount to be stated in such resolution for the maintenance in good condition of such improvements for a period of not less than five years from the time of its completion, or both, in the discretion of the mayor and council" is an exercise of legislative power within the declaration thereof in section 7, art. 10 "Williams' Sec. 272), in respect to. the levy of special assessments for local improvements upon the property thereby benefited.

    (a)  Such an undertaking to maintain in good condition is intended as an implied guaranty of the durability of the improvement as against and defect in the same as originally made.

4.  **MUNICIPAL CORPORATIONS—Public Improvement—Contractor—Liability on Bond—Inadequacy of Plans.** When a contractor under the act of April 17, 1908 (Sess. Laws 1907-08, c. 10, art. 1, Secs. 1-7; sections 722-728, Comp. Laws 1909), undertakes to

maintain in good condition any improvement therein authorized, he is not relieved from liability by the fact that he fully complied with the plans and specifications in performing the work, and that the repairs were necessitated by inadequacy of such plans and specifications.

5.     **CONTRACTS—Construction—Inconsistent Clauses.** When a contract contains inconsistent clauses, the intent of the parties, if possible, will be ascertained from the whole contract, construed with reference to the law applicable to the same.

6.     **MUNICIAL CORPORATIONS—Public Improvements—Pavement Contractor's Bond—Construction—Inconsistent Clauses.** A contract for the construction of a street pavement in accord with a city's own plans and specifications, as a charge upon the property benefited thereby, contains the following provisions:

"The contractors further agree that they will maintain in good condition said paving, curbing, and guttering, and every part thereof, for the full period of five years from the date of the completion thereof, and that during such period of five years they will, at their own expense, replace and restore any defective material used in said work or any part thereof, and will in like manner and for a like period of time repair any and all defects caused by poor workmanship or defective materials or by any fault of the contractors."

The clause for maintenance in good condition for the full period of five years from the date of completion of the pavement is so far inconsistent with the clause for the repair of any and all defects caused by poor workmanship or defective materials or by any fault of the contractors as to require constructive reconcilation with reference to Session Laws of 1907-08, c. 10, art. 1, Sec. 4 (section 725, Comp. Laws 1909), as limited by section 7 art. 10 (Williams' Sec. 272), of the Constitution; and, when so construed, the first clause will be allowed to so far expand the otherwise restricted meaning of the latter and the latter to so far limit the otherwise comprehensive meaning of the former as to bring the contract within the purview of the said statute and, thus, to require the contractors to maintain the pavement in good condition as a guaranty of durability, and as against any defect in the same when originally constructed without regard to any question of whether such plans and specifications were adequate, their adequacy being assumed by the contract.

(Syllabus by Thacker, C.)

*Error from District Court, Washington County;*

*R. H. Hudson, Judge.*

Action by the City of Bartlesville against R. S. Gilfillan

and another, partners as R. S. Gilfillan & Son. Judgment for plaintiff, and defendants bring error. Affirmed.

*Rowland & Talbott, James A. Veasey,* and *Campbell & Goshorn,* for plaintiffs in error.

*Burdett Blue,* for defendant in error.

THACKER, C. Plaintiffs in error will be designated as defendants, and defendant in error as plaintiff, in accord with their respective titles in the trial court.

On December 12, 1908, defendants, as contractors, entered into a contract with plaintiff to pave one of its streets in accord with its own plans and specifications; and this contract contains, among other things, the following provision:

"The contractors further agree that they will *maintain in good condition said paving, curbing, and guttering, and every part thereof, for the full period of five years from the date of the completion thereof, and that during such period of five years they will, at their own expense, replace and restore any defective material used in said work or any part thereof, and will in like manner and for a like period of time repair any and all defects caused by poor workmanship or defective materials or by any fault of the contractors;* and that for the full and faithful performance of the obligations herein named they will, within ten days from the signing of this contract, execute and deliver to the city treasurer of said city a bond in the penal sum of $2,000 with good and sufficient surety to be approved by the mayor of said city."

The bond required of defendants by this contract was duly executed to the plaintiff, and is now before us in the case of *Phillips v. City of Bartlesville, ante,* 148 Pac. 1016.

The pavement was constructed by defendants and accepted by the plaintiff, and was paid for by means of the latter's bonds issued therefor. Within about six months after its completion, defects in the pavement, as originally constructed, were

discovered; and within two years after its completion practically all of its top surface had worn off.

Plaintiff brought this action upon said contract and, upon trial to a jury, recovered judgment against defendants for $8,-600, without allegation or proof of the cause of such defect or of the party against whom the same is chargeable, upon the theory that defendants were bound to "maintain in good condition said paving" without regard to the cause of such defect or of the party blamable therefor.

The answer, among other things, alleges and defendant offered to prove, but the court, upon objection, rejected evidence, that the cause of such defect was not chargeeable to them but to plaintiff, in that the latter's plans and specifications did not provide for more durable paving.

The question presented by defendants' answer and offer of proof was also raised by their motion to require it to make its petition more definite and certain, by demurrer to its evidence and by requested instruction to the jury; and this question requires a construction of the foregoing italicized portion of the contract, which must be done with reference to the act of April 17, 1908 (Sesion Laws 1907-08, p. 170; section 725, Comp. L. 1909), which reads as follows:

" * * * And the mayor and council shall, by said resolution, provide that the contractor shall execute to the city a good and sufficient bond, in an amount to be stated in such resolution, conditioned for the *full and faithful execution of the work and the performance of the contract and for the protection of the city and all property owners interested against any loss or damage by reason of the negligence or improper execution of the work, and may require a bond in an amount to be stated in such resolution for the maintenance in good condition of such improvement for a period of not less than five years from the time of its completion,* or both,* in the discretion of the mayor and council."

Defendants, in effect, contend (1) that the contract is not for maintenance except as against their own fault, if any, in failing to comply with the plaintiff's plans and specifications, and (2) that to construe either said provisions of the contract or said provisions of the statute otherwise would render them violative of the constitutional provision expressly declaring the legislative power to authorize counties and municipalities to levy assessments for "local improvements upon property benefited thereby," which thus, upon the principle of *"expressio unius est exclusio alterius,"* impliedly inhibits such levy except for such improvements, in that such a provision would involve a charge for repairs as contradistinguished from improvements against such property in such a contract, although they neither allege nor prove that the price they received under the contract exceeded what the original improvement otherwise would have cost, not offer to return any portion of the amount thereof.

The foregoing provision of the statute is an exercise of legislative power under the Constitution (*Missouri, K. & T. Ry. Co. v. City of Tulsa et al.,* 145 Pac. 398, and *Kerker et al. v. Bocher et al.,* 20 Okla. 729, 95 Pac. 981) and must be construed with and as limited by section 7, art. 10 (Williams' Sec. 272), of the same, which read as follows:

"The Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefited thereby, homesteads included, without regard to a cash valuation."

That the distinction between "improvements" and "repairs" made in many of the decided cases is not a conclusive criterion in ascertaining what is an improvement and is, therefore, almost, if not quite, unimportant, will be seen from an examination of 11 Enc. U. S. Sup. Ct. Rep. 3, 4, 6, and *Stevens et al. v. City of Port Huron,* 149 Mich. 536, 113 N. W. 291, 12 Ann. Cas. 603, and the cases therein cited; and that the term "local improvements," as used in our Constitution includes all, and

must be limited to such improvements as are in fact or are determined in the proper exercise of legislative discretion to be special and peculiarly beneficial to the property affected and thus to its owners, as contradistinguished from such as are only beneficial to property in general or to the general public, and which may be made a charge upon such property without violating the fourteenth amendment to the federal Constitution, will appear from an examination of 11 Enc. U. S. Sup. Ct. Rep. 3, 4, 6, and *Stevens et al. v. City of Port Huron, supra,* and its citations, together with the following cases: *Norwood v. Baker,* 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443, which should be examined in the light of the next following case: *French v. Barber Asphalt Pav. Co.,* 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879, affirming 158 Mo. 534, 58 S. W. 934, 54 L. R. A. 492, *Wright v. Davidson,* 181 U. S. 371, 21 Sup. Ct. 616, 45 L. Ed. 900; *Webster v. City of Fargo,* 181 U. S. 394, 21 Sup. Ct. 623, 45 L. Ed. 912; *Town of Tonawanda v. Lyon,* 181 U. S. 389, 21 Sup. Ct. 609, 45 L. Ed. 908; *Chadwick v. Kelly,* 187 U. S. 540, 23 Sup. Ct. 175, 47 L. Ed. 293; *Schaefer v. Werling et al.,* 188 U. S. 516, 23 Sup. Ct. 449, 47 L. Ed. 570; *City of Seattle v. Kelleher, Adm'r,* 195 U. S. 351, 25 Sup. Ct. 44, 49 L. Ed. 232; *Louisville & N. Ry. Co. v. Barber Asphalt Pav. Co.,* 197 U. S. 430, 25 Sup. Ct. 466, 49 L. Ed. 819; *Cleveland, C., C. & St. L. Ry. Co. v. Porter,* 210 U. S. 177, 28 Sup. Ct. 647, 52 L. Ed. 1012.

In 11 Enc. U. S. Sup. Ct. Rep. 3, 4, it is said:

"The Legislature, in the exercise of the right of taxation, has the authority to direct the whole, or such part as it may prescribe, of the expense of a public improvement, such as the establishing, the widening, the grading or the repair of a street, to be assessed upon the owners of lands benefited thereby. And according to the weight of judicial authority, the Legislature has a large discretion in defining the territory to be deemed specially benefited by a public improvement, and which may be subjected to special assessment to meet the cost of such improvements."

In *Oklahoma City v. Shields*, 22 Okla. 265, 100 Pac. 559, where other provisions of the said act of April 17, 1908, were considered, the same was upheld as valid.

The above-quoted provision of the statute evidently authorizes a contract for maintenance as an implied guaranty of the durability of the improvement, which guaranty assumes the adequacy of the plans and specifications upon which the municipality invites bids, thus eliminating every question in that regard, and, being unconditional as to the adequacy of the work and materials, in effect binds the contractor to maintain in good condition as against any and all defects in the origial improvement.

Such an unconditional guaranty is but a proper precaution against the difficulty, if not impossibility, of discovering and proving against the contractors the precise cause of defects apparent only after construction and acceptance. In 2 Municipal Corporations (Dillon) Sec. 289, it is said:

"Contractors for street paving, in their endeavor to induce municipal governments to adopt their pavements, make representations as to its character and durability, and it is proper that some remedy should be reserved to the municipality by which it can enforce their contract and representations in this regard. * * * In pavements, particularly in asphalt, the durability depends very largely upon the character of the work, the condition of the foundation, and the mixture of the material used; and it is not difficult for contractors to deceive the inspectors in regard thereto:"

Mr. Dillon thus states the evil which our statute evidently sought to remedy by authorizing a contract for maintenance as an unconditional implied guaranty of the durability of the work and material.

This provision of the statute must, of course, be read into this contract as a part thereof; and the pertinent clauses of the contract must be construed with due regard to it. 9 Cyc. 582.

The defendants' undertaking to "maintain in good condition," taken literally, is comprehensive enough to require them to do all they undertake to do by their connectively following but literally independent undertaking for the same period to "replace and restore any defective material used," and to "repair any and all defects caused by poor workmanship or defective materials or by any fault of the contractors"; and this observation suggests the question as to whether the latter clause serves any useful purpose, unless it be regarded as merely explanatory of the preceding clause, and as limiting it to the duty of maintenance as against any actual fault on the part of the contractors, as in failing to construct according to plans and specifications. This question, however, could more easily be answered in the affirmative, if said latter clause was not so comprehensive of the possible faults of the contractors in respect to work and material that when we attempt to view it as explaining and so limiting the preceding clause it seems all sufficient in itself, and as rendering useless the clause we thus attempt to explain and limit, that is, the clause imposing upon defendants the duty to "maintain in good condition for the full period of five years from the date of completion." In our opinion each of these clauses must be given effect, and the clause requiring defendants to "repair any and all defects caused by poor workmanship or defective materials or by any fault of the contractors," in so far as it impliedly negatives the idea of an obligation to "maintain in good condition" as against defects due to inadequacy of plaintiff's own plans and specifications, must be regarded as literally inconsistent with this obligation to "maintain in good condition"; and, in order to harmonize these otherwise inconsistent clauses, they must be construed together with reference to said provisions of the statute and the intent of the parties thus collected from the whole contract. 9 Cyc. 583.

Constructing the aforesaid two clauses of the contract before us together, with reference to the said provision of the

statute, we think the first requires us to slightly expand what might otherwise be thought the restricted meaning of the latter, so that, in one of its aspects, the latter may possibly include incidentally, as a fault of the contractor's, inadequacy of plans and specifications, although its general and controlling aspect is that of an obligation to maintain in good condition which implies an unconditional guaranty of adequacy of the work and material required by the plans and specifications to endure without need of repairs for the designated period; and we also think the latter clause requires us to limit the otherwise too comprehensive meaning of the former, and to hold that it requires 'maintenance only as against want of durability due to defects in the original improvement, or, in other words, as against the actual or agreed fault of the defendant contractors.

The contract, as between the parties thereto, in view of the above-quoted provision of the statute and the nature of the work of construction as stated by Mr. Dillon, is construed as predicated upon the fixed and conclusive assumption by the contractors that the plans and specifications are inadequate to justify their implied guaranty of durability in their agreement to maintain in good condition for the full period of five years from the date of completion of the work of construction. As between these parties, all defects in the pavement, as originally constructed, must in effect be charged to the fault of the defendants, who undertook to maintain for the full period of five years as an implied guaranty that the work done and the material furnished by them according to the plans and specifications would endure without need of repairs for that period.

As we view it, the provision for maintenance in good condition, implying as it does a guaranty of adequate work and material to endure for the specified period without need of repairs, is not a provision for ordinary repairs, which are generally unrelated to any question of defect in the original construction; but, if it be regarded as a provision for such ordin-

ary repairs, it does not necessarily follow that it is not an improvement specially and peculiarly beneficial to the property sought to be charged with the cost of its construction, and thus within the meaning of the term "local improvements," as used in the costitutional provision quoted, as will be seen from an examination of the foregoing authorities, which show that the fact or legislative determination of benefit to the property, and the character of such benefit, detremines whether the thing is a local improvement.

In the case of *Cameron-Hawn Realty Co. v. City of Albany*, 207 N. Y. 377, 101 N. E. 162, 49 L. R. A. (N. S.) 922, it is held:

"A paving contractor is not relieved from liability on the portion of the contract requiring him to keep the pavement in repair for a specified time, by the fact that he fully complied with the specifications in performing the work, and that the repairs were necessitated by the faulty plans adopted for the improvement."

Also see *Barber Asphalt Pav. Co. v. Louisville*, 123 Ky. 687, 97 S. W. 31, 29 Ky. Law Rep. 1255, 9 L. R. A. (N. S.) 154, with notes, and *City of Danville v. Danville Ry. & Elec. Co.*, 114 Va. 382, 76 S. E. 913, 43 L. R. A. (N. S.) 463, with notes; and as to the power of a city to bind a contractor to repair pavements which he makes, see *Portland v. Bituminous Pav. & Imp. Co.*, 33 Or. 307, 52 Pac. 28, 44 L. R. A. 527, with notes, 72 Am. St. Rep. 713, with notes. Also see *Morton et al. v. Sullivan*, 96 S. W. 807, 29 Ky. Law Rep. 943; *Allen v. Labsap*, 188 Mo. 692, 87 S. W. 926, 3 Ann. Cas. 306; *Hedge v. City of Des Moines*, 141 Iowa, 4, 119 N. W. 276; *Latham v. Village of Wilmette*, 168 Ill. 153, 48 N. E. 311; *Diver v. Keokuk Savings Bank et al.*, 126 Iowa, 691, 102 N. W. 542, 3 Ann. Cas. 669; *City of Sedalia ex rel. Taylor v. Smith*, 206 Mo. 346, 104 S. W. 15; *Erie City v. Grant*, 24 Pa. Sup. Ct. 109.

For the reasons stated, the judgment of the trial court should be affirmed.

By the Court: It is so ordered.