**FULKERSON et al. v. JOHNSON et al.**

No. 19242. Opinion Filed Sept. 10, 1929.

G. Earl Shaffer and Grace Arnold, for plaintiffs in error.

Wayne Lassater, Lloyd J. Seay, and R. K. Robertson, for defendants in error.

G. Lee Gibbs, amicus curiae.

DIFFENDAFFER, C. This action was commenced originally by Wm. S. Johnson seeking the foreclosure of a special sewer assessment lien on certain property in the city of Drumright. It appears that J. P. Daniels and Carrie Daniels had some interest in the special tax warrant. They were later made parties plaintiff. These are defendants in error, but will be hereinafter referred to as plaintiffs. J. W. Fulkerson was alleged to be the owner of record and in possession of the property, plaintiff alleging generally that the other defendants are claiming some right, title or interest in the property. Hobart F. Fulkerson and Ralph Blake, county treasurer, were not served with summons. J. W. Fulkerson, the Shaffer Oil & Refining Company, and Continental & Commercial Trust & Savings Bank, who appeared as defendants below, are plaintiffs in error, and for convenience will be hereinafter referred to as defendants.

Save for the question of whether or not the court has jurisdiction to entertain the action, there is but little, if any, contention that the petition was not in all respects sufficient. We deem it unnecessary to set out in detail or in substance the allegations therein contained, except to say that the petition is for the foreclosure of a lien claimed by reason of a special tax warrant issued by the city of Drumright in connection with the construction of a sewer along or through the property involved.

The proceedings leading up to the issuance of the special tax warrant are not seriously challenged, except as to the special interest of defendants Shaffer Oil & Refining Company and the Continental & Commercial Trust & Savings Bank in the property, which will be hereafter noted.

The defendants Shaffer Oil & Refining Company and the Continental & Commercial Trust & Savings Bank, aside from the question of jurisdiction, pleaded in their answer, in substance, that their interest in the property arose by reason of an oil and gas lease, executed by J. W. Fulkerson, the owner of the land. in which the block in question is included, prior to the time the land was platted and laid out as a town site, and that in the dedication by Fulkerson, all oil, gas or other minerals located in and under the lands described in the plat were reserved and expressly withheld from the dedication. A copy of the dedication and certificate is attached to the answer and contains the following proviso:

"Provided however, that by this dedication all of the oil and gas and other minerals under the streets, alleys, avenues, and the part of said plat designated as reservation and under all of said addition are reserved and the royalty therefrom reserved to the said J. W. Fulkerson, and that nothing in this dedication shall in any wise interfere with or work a restriction on any oil and gas lease, now upon said premises, or the holder thereof, or the operations under and by virtue of said lease."

Defendant J. W. Fulkerson filed a demurrer upon the following grounds:

"(1) That said petition shows upon its face that this court has no jurisdiction over the subject-matter of said action.

"(2) That said petition fails to state facts sufficient to constitute a cause of action against this defendant, or to put him upon his defense."

After this demurrer was overruled, defendant Fulkerson filed an answer in the nature of a general denial, and, in substance, pleaded affirmatively the same defense as the other defendants; alleging that he held a royalty interest in the oil and gas. The replies to the separate answers were, in effect, general denials.

Plaintiffs and defendants, except Fulkerson, filed motions for judgment upon the pleadings. The motion of plaintiffs was sustained against defendants Shaffer Oil & Refining Company and the Continental & Commercial Trust & Savings Bank. Trial was had before the court as between plaintiffs and defendant Fulkerson, resulting in a decree in favor of plaintiffs sustaining their lien against the property and ordering it sold in satisfaction of the claim. Defendant Fulkerson in due time filed his motion for a new trial, which was overruled, and he and the other defendants appeal, but file separate petitions in error. The two petitions in error will be considered together.

Plaintiff presents the question that the appeal of defendants Shaffer Oil & Refining Company and the Continental & Commercial Trust & Savings Bank should be dismissed, upon the grounds that no motion for new trial was filed by them. This question, though presented in the brief last, should and will be considered first.

Several cases are cited in support of this contention, but they go only to the proposition that in order to have alleged errors occurring at the trial reviewed in the Supreme Court, a motion for a new trial must have been filed and acted upon by the trial court and exception taken thereto.

The cases cited are: In re Foley, 78 Okla. 58, 188 Pac. 885; Eastwood v. Clinkscales, 82 Okla. 52, 197 Pac. 455. Another case is quoted from, though no title nor book nor page number is given, which seems to hold:

"The ruling on a demurrer to the evidence is a decision occurring on the trial, and, in order to enable the Supreme Court to review such ruling, it is necessary that a motion for a new trial be filed within the time prescribed by law."

These cases are clearly not in point, since as to these defendants there was no trial and that judgment was rendered against them upon the pleadings and without a trial.

It is well settled that when judgment is rendered upon the pleadings, no motion for new trial is necessary. Nixon v. Gen. Explosive Co., 87 Okla. 88, 209 Pac. 428; Schuber v. McDuffie, 67 Okla. 160, 169 Pac. 642; Lee v. U. S., 7 Okla. 558, 54 Pac. 792; Doorley v. Burford & George Mfg. Co., 5 Okla. 594, 49 Pac. 936.

The contention that the appeal should be dismissed cannot be sustained.

Defendants by both petitions in error raise the question that as to the oil and gas and other mineral interests in the land the judgment is erroneous, for the reason that such interests were expressly reserved from the dedication, and the defendant Shaffer Oil & Refining Company acquired its rights by and through an oil and gas mining lease executed by the owner of the land prior to the platting of the land for town site purposes. It is contended that under the circumstances only the surface rights to the land involved became liable to the lien and a sale thereunder for the special sewer assessments. The question is extensively briefed by the parties and in the amicus curiae brief, but in view of the question raised in both petitions in error, of the right of plaintiffs to maintain an action in the district court to foreclose a lien of this nature, and the former decisions of this court, and the conclusions reached herein, we deem it unnecessary to pass upon this question.

The authority of the city to levy the special tax for sewers is found in section 4406, C. O. S. 1921.

Section 4407, C. O. S. 1921, in force when the assessments here involved were made, provides:

"The mayor and councilmen or board of trustees shall each year levy on each lot or piece of ground a sufficient sum, in addition to other taxes, to discharge the maturing installment on each particular tract, with interest on the unpaid installment for such year, certify the same to the county clerk to be collected as other taxes, which money when collected by the county treasurer, * * * shall be paid to the holder of such certificate and indorsed thereon upon presentation of the certificate. * * * The said assessment shall be a charge and lien against the property upon which assessed until fully discharged, but unmatured installments shall not be deemed to be within the terms of any general covenant or warranty."

The question here presented was before this court in City of Sapulpa v. Land, 101 Okla. 22, 223 Pac. 641, wherein the city of Sapulpa, operating under a freeholders' charter and ordinances adopted thereunder, sought to enforce a lien for ad valorem city taxes and a special paving assessment, and foreclosure same in an action in the district court. It was there held:

"The statutes of this state, sections 9730 to 9749, inclusive, Comp. Stat. 1921, provide a full and comprehensive system by which delinquent taxes on real estate may be collected by a sale of such real estate by the county treasurer, the collecting agency. Such method being the only one authorized by the statutes, is exclusive for the enforcement of such tax liens, and a foreclosure of such liens in the district courts of this state is unauthorized."

Plaintiffs cite M., K. & T. Ry. Co. v. City of Tulsa, 113 Okla. 21, 238 Pac. 452, as authority for the proceedings here involved. It was there held:

"The provisions of a city charter, and of an ordinance in harmony therewith, authorizing the city board of commissioners to improve streets and alleys, and to let contracts for paving same, and to make assessments against abutting lots in proportion to the benefits accruing to such lots, and to create a lien against such lots for the payment of such assessments, and to provide that such lien may be foreclosed in a civil action in the district court, do not exceed the limitations contained in section 3a, article 18 of the Constitution upon the powers of a city, or conflict with the provisions thereof, provided such charter provision and ordinance do not undertake to make the lien for city assessments prior and superior to the liens of the state for delinquent taxes or other liens which the

state may have against such property. Nor is the provision of such charter and ordinance authorizing a foreclosure of such lien by a civil action in district court invalid, provided such procedure is not made exclusive."

It will be observed that the right to maintain the action in that case was based wholly upon the powers granted in the charter of the city of Tulsa. In the instant case no such charter provisions are shown, and it is expressly alleged that the city of Drumright is operating under the general laws of the state relative to cities.

It is insisted, however, that the assessment herein is not a tax, but is made a lien by the statute and is therefore enforceable as other liens. In this connection, plaintiffs cite City of Sapulpa v. Land, supra, wherein it was said:

"An assessment for local improvements as authorized by section 7 of article 10 of the Constitution, is not a tax in the general acceptation of the term."

There are several distinctions made between a tax in the general acceptance of the term and an assessment for local improvements, but both have their origin in the same source or power. Page and Jones on Taxation by Assessment, vol. 1, p. 59. They are in many respects alike. As to general taxes, the following is the general rule:

"The power to tax being legislative, there must be distinct authority of law for every levy under that power. The authority may come from the Constitution, which, in exceptional cases, will provide for the levy of a specific tax, or for a tax for some definite purpose; but in general the authority will come from the legislative and must be expressed in statutory form." Cooley on Taxation (3rd Ed.) vol 1, p. 546.

As to special assessments for improvements, the following is the general rule:

"A municipal corporation has no inherent power to levy local assessments for special benefits accruing to property by reason of a public improvement. No such power is conferred upon a municipal corporation by any rule of the common law."

"The power of levying special assessments to pay for the cost of constructing public improvements which confer some special local benefit and not being an inherent power, and not existing at common law, it follows therefore that a municipal corporation does not possess such power unless it is conferred upon it by some express provision of the written law." Page and Jones on Taxation by Assessment, vol. 1, p. 346.

"Assessments being a peculiar species of taxation, there must be special authority of law for imposing them." Cooley on Taxation (3rd Ed.) vol. 2, p. 1156.

In order to make taxes a lien, the statute must so provide.

The existence of a lien for assessments for improvements is purely statutory, and no lien exists unless the statutes provide therefor. Page and Jones on Taxation by Assessment, vol. 2, p. 1743; 44 C. J. p. 797, sec. 3396.

As to the power to sell for taxes, it is said:

"Tax sales are made exclusively under a statutory power. The power which the state confers to assess and levy taxes does not of itself include a power to sell lands in enforcing collection, but the power to sell must be expressly given." Cooley on Taxation (3rd Ed.) vol. 2, p. 912.

There being no common law of assessments, the method of collecting an assessment is purely statutory, and the method provided by the Legislature is exclusive. Page and Jones on Taxation by Assessment, vol. 2, p. 1814.

When taxes have been levied and assessed, they are to be collected after some method prescribed by law. Cooley on Taxation (3rd Ed.) vol. 2, p. 802.

It will thus be seen that taxes and assessments for special improvements are, in their origin, their effect as being a lien on land, and their enforcement, alike.

In this connection, it will be noted that section 4406, C. O. S. 1921, after providing the manner and method of computing and apportioning the whole cost of the construction of the sewers within the sewer district, provides:

"The mayor and councilmen or the board of trustees shall thereupon levy and assess a special tax, by ordinance against each lot or piece of ground within the district, * * * and if at the expiration of such time, the amount named in such ordinance, together with the cost of publication, shall not be paid, then the mayor and councilmen, or the board of trustees, shall cause tax warrants to be issued against such lots and pieces of ground in said district. * * *"

When this section is read in connection with section 4407, which provides that the mayor and councilmen or board of trustees shall each year levy on each lot, or piece of ground, a sufficient sum, in addition to other taxes to discharge the maturing installment on each particular tract and cer-

tify the same to the county clerk (whose duty it was at the time of the enactment of the law to make up the tax rolls) to be collected as other taxes, and in connection with section 4792, C. O. S. 1921, which reads:

"In all cases where municipal improvements of any character are made by special assessments upon the abutting lots, or upon blocks, or where a special assessment may be created by ordinance for the direct benefit of a limited locality in any town, the town may issue a tax warrant against each separate abutting lot, which shall be a valid lien thereon, and shall be extended, collected and bear a like penalty with other taxes of the state, county or town"

—it is clear the intention of the Legislature was that such installments were to be entered and extended upon the tax rolls of the county, and be treated as, and collected in the same manner as, other taxes of the state, county or town.

As to assessments for improvements, the general rule as to the manner of their enforcement is stated in 44 C. J. p. 819, as follows:

"As a general rule a statute or charter providing a specific method for the enforcement of assessments is held to supersede all other methods, and where the statute provides that they shall be collected as provided by ordinance, the remedy provided by ordinance is exclusive."

These general rules were recognized and followed in City of Sapulpa v. Land, supra, in the 12th paragraph of the syllabus, which reads:

"Though the charter of a municipal corporation may provide for a lien upon property assessed for local improvements, the municipal legislative body may not provide for the creation of such lien and for methods of enforcement different from that provided by general law of the state in the absence of authorization by, and contrary to, the provisions of the charter of the municipality."

The provisions of section 4618, C. O. S. 1921, relative to the certification and collection of assessments for street improvements are very similar to the provisions of section 4407. The former provides that they shall be certified to the county treasurer and collected as other delinquent taxes. The latter provides that they shall be certified to the county clerk to be collected as other taxes. Both provide for collection by the county treasurer as other taxes are collected.

The question was before this court in Glasser v. Goltry, 136 Okla. 182, 276 Pac.

738, as to the right to maintain an action in the district court to foreclose a lien of an assessment for street improvements, and it was therein held:

"The statutes of this state (section 4618, C. O. S. 1921, and section 28, Sess. L. 1923, p. 278) provide a full and comprehensive system by which delinquent installments, interest and penalties on special assessments for street improvements may be collected by a sale of such real estate by the county treasurer, the collecting agency. Such method, being the only one authorized by the statutes, is exclusive for the enforcement of such special assessment liens, and a foreclosure of such liens in the district courts of this state is unauthorized."

The rule therein announced, following City of Sapulpa v. Land, supra, governs in the instant case. It follows that the action to foreclose the lien in the instant case is unauthorized, and the trial court therefore was without jurisdiction of the subject-matter, and it was error to overrule the demurrer of defendant Fulkerson, and likewise error to render judgment upon the pleadings in favor of plaintiffs and against defendants Shaffer Oil & Refining Company, and the Continental & Commercial Trust & Savings Bank.

The judgment should be reversed and remanded, with direction to dismiss the action.

TEEHEE, JEFFREY, FOSTER, and LEACH, Commissioners, concur.

By the Court: It is so ordered.