OSCN Found Document:Question Submitted by: The Honorable Ross Ford, Oklahoma House of Representatives, District 76

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 Question Submitted by: The Honorable Ross Ford, Oklahoma House of Representatives, District 76
2023 OK AG 10
Decided: 06/30/2023
Oklahoma Attorney General Opinions

Cite as: 2023 OK AG 10, __ __

 
¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Consistent with article X, section 7 of the Oklahoma Constitution, may a municipality levy an assessment for the purposes of the "operation and maintenance" of a "public safety protection district" under the Public Safety Protection District Act ("Act"), title 11, sections 29-151--29-160 of the Oklahoma Statutes?
I.
SUMMARY
¶1 Oklahoma municipalities cannot levy assessments for local improvements pursuant to the Act without offending article X, section 7 of the Oklahoma Constitution. The creation of a public safety protection district benefits the entire community and the general public rather than benefiting specific property owners. Article X, section 7 of the Oklahoma Constitution requires local improvements to be special and peculiarly beneficial to specific property owners, or "localized." Because the district is beneficial to the community as a whole, an Oklahoma court would likely conclude that a public safety protection district contravenes article X, section 7.
II.
BACKGROUND
A. The Public Safety Protection District Act 
¶2 The Act authorizes "[t]he governing body of a municipality" to place a resolution calling for the creation of a "public safety protection district" before the voters of the initiating municipality at the next general election. 11 O.S.2021, § 29-152. A municipality wishing to implement a public safety protection district "shall" levy "an annual assessment no greater than five (5) mills" of the assessed real property's value within the district, with the proceeds derived therefrom to be used for the "operation and maintenance of the public safety protection district . . . ." Id. § 29-156(A). "Public safety protection" is defined as 1) law enforcement; 2) fire public safety protections; or 3) emergency medical services provided by the municipality, or any combination of these three. Id. § 29-160. Further, under the Act, a public safety protection district "shall include all territory located within the municipality." Id. § 29-153(A). Because the legislature has expressly granted the authority described above, the essential question posed is whether the Act's levying of an assessment for the stated purposes and use is constitutional.
B. The Constitution
¶3 Under article X, section 7 of the Oklahoma Constitution, counties and municipalities, pursuant to legislative authorization, may "levy and collect assessments for local improvements upon property benefited thereby, homesteads included, without regard to a cash valuation." OKLA. CONST. art. X. § 7. In both titles 11 and 19 of the Oklahoma Statutes, the Legislature has authorized counties and municipalities to levy assessments for local improvements. See e.g., the Improvement District Act, 11 O.S.2021, §§ 39-101--39-121; the Act; the Fire Protection Districts statutes, 19 O.S.2021, §§ 901.1--901.29; and the Sewer Improvement Districts statutes, 19 O.S.2021, §§ 871--898.7. Indeed, improvement districts, fire protection districts, and sewer improvement districts are scattered across Oklahoma's seventy-seven counties. Passed in 2021, the Act's breadth raised concerns among municipalities that it may not be valid under article X, section 7 of the Oklahoma Constitution, especially in light of this office's opinion in 1988 OK AG 44. As a result, this office has been asked to examine whether the Act passes constitutional muster.
III.
DISCUSSION
A. Oklahoma law permits assessments only when a local improvement benefits a limited class of property owners as opposed to the community as a whole or the general public.
¶4 Although both taxes and assessments have their origin in article X, case law has distinguished between a tax and an assessment for local improvements as authorized by article X, section 7 of the Oklahoma Constitution.[1] Fulkerson v. Johnson, 1929 OK 296, ¶ 21, 280 P. 430, 432; City of Sapulpa v. Land, 1924 OK 92, ¶ 54, 223 P. 640, 647. Notably, assessments levied pursuant to article X, section 7 must relate to local improvements and are based on the notion that the legislature may require property owners whose property receives a benefit from these local improvements to pay for the associated costs. Public Serv. Co. v. Northwest Rogers Cnty. Fire Prot. Dist., 1983 OK 96, ¶ 15, 675 P.2d 134, 138 ("PSO") (citing Alley v. City of Muskogee, 1916 OK 332, ¶ 3, 156 P. 315, 316). The validity of an assessment hinges on whether the property of a limited class of taxpayer-owners has received a "special benefit" from a local improvement project. Id.
¶5 As previously stated, the Act authorizes for the levying of "an annual assessment" for the purpose of the "operation and maintenance of the public safety protection district." 11 O.S.2021, § 29-156(A). Specifically, a municipality must use proceeds derived from the assessment for the "operation and maintenance" of the district, including expenses related to purchasing and maintaining public safety equipment and vehicles, payment of salaries, and benefits for municipal employees who provide law enforcement, fire protection, or emergency medical services, and payment for emergency medical services themselves. Id.
B. Oklahoma Attorney General Opinion 1988-44 concluded that criminal justice districts benefited the community as a whole and were thus unconstitutional.
¶6 This office previously addressed a similar issue in Oklahoma Attorney General Opinion 1988-44 ("1988 Opinion"). The 1988 Opinion analyzed the constitutionality of legislation authorizing the creation of "criminal justice districts," that could finance the construction and operation of jails and "similar detention facilities." 1988 OK AG 44, ¶ 1 (referring to 19 O.S.Supp.1988, §§ 903.1--903.22).[2] The 1988 Opinion addressed, among other things, whether the assessment used for the operation of the criminal justice district constituted a "local improvement" to the property and property owners of the district. Ultimately, this office concluded that "there is no rational way to draw a connection between the construction and operation of a jail and any tangible benefit to specific real estate." Id. ¶ 16. The 1988 Opinion concluded that the operation of jails in conjunction with a criminal justice system is "an integral government service for the benefit of the citizens as a whole and is not a service for the improvement or protection of real property . . . ." Id. ¶ 19 (emphasis added). Accordingly, the construction and operation of such facilities did not constitute a "local improvement" financeable through assessments on real property. Id. Consequently, the opinion concluded that the criminal justice districts were essentially a backdoor ad valorem tax and therefore unconstitutional. Id. ¶ 20.
C. Local improvements must create a specific and peculiar benefit for a limited class of property owners.
¶8 Oklahoma courts have uniformly held that a local improvement must benefit the property on which the costs are assessed in a manner not enjoyed by property generally in the city. Bragdon v. City of Muskogee, 1928 OK 659, ¶ 9, 271 P. 1006, 1008. Accordingly, the term "local improvement" refers only to improvements which are specially or uniquely beneficial to the property affected and thus to its owners. PSO, 1983 OK 96, ¶ 17, 675 P.2d at 138; see also 1988 OK AG 44, ¶ 9 (citing Harrington v. City of Tulsa, 1934 OK 711, 39 P.2d 120; Gilfillan v. City of Bartlesville, 1915 OK 302, 148 P. 1012) (noting that local improvements must be special and peculiarly beneficial to specific property owners as distinguished from a benefit to the public in general or to the community). However, Oklahoma courts have also repeatedly acknowledged that incidental benefit to an entire municipality does not undo the foundation for a local assessment as long as the benefit received by the property owners in the district is greater. Harrington, 1934 OK 711, ¶ 7, 39 P.2d at 122 (citing Bragdon (citation omitted)); PSO, 1983 OK 96, ¶ 17, 675 P.2d at 138. The Oklahoma Supreme Court has additionally concluded that valid, proposed districts may not exercise powers other than those necessary to conduct their specific mission for the affected land and specifically noted that the goal of "public safety" in and of itself does not "transmogrify the intended local benefit component into a general service of government." PSO, 1983 OK 96 n.27, 675 P.2d 134, 142 n.27.
¶9 Moreover, the Oklahoma Supreme Court has repeatedly looked to other jurisdictions in developing its "local improvement" jurisprudence. See Bragdon, 1928 OK 659, ¶¶ 10--11, 271 P. at 1008 (citing Illinois and Oregon case law); Armstrong v. Sewer Improvement Dist. No. 1, Tulsa Cnty., 1948 OK 198, ¶¶ 8--10, 199 P.2d 1012, 1016 (citing Florida, California and Oregon case law). The Florida Supreme Court has employed a similar framework for analyzing the validity of assessments, with its inquiry turning on whether the services at issue provide a "special benefit" to the assessed property. City of N. Lauderdale v. SMM Properties, Inc., 825 So. 2d 343, 345 (Fla. 2002) (citing Lake County v. Water Oak Mgmt. Corp., 695 So. 2d 667, 669 (Fla. 1997)). In City of North Lauderdale, the City adopted an ordinance which levied an assessment on all property owners in the City for the purposes of establishing an "integrated fire rescue program" which was to specifically provide for "(1) fire suppression, (2) first-response medical aid, and (3) emergency medical services (EMS)."[3] Id. The Court found that:
[T]here is no logical relationship between emergency medical services (the assessment, treatment, and transport of sick or injured people) and a special benefit to real property. Emergency medical services provide a personal benefit to individuals. There is no indication from the City or in the record how emergency medical services enhance the value of the property against which the assessment is imposed. 
Id. at 350. The same logic informs the analysis here on whether the Act provides a "local improvement" that may justify the levying of an assessment. As used in the Act, "public safety protection" means any of, or combinations thereof, the following operations:
1. Law enforcement;
2. Fire public safety protections; or
3. Emergency medical services provided by the municipality.
11 O.S.2021, § 29-160.
¶9 Much like the Florida Supreme Court surmised, there is little rational connection between the provision of medical emergency services and a "local improvement" to property. While the provision of such services may benefit the owners of real property within the district, it does not bear directly on the valuation of the property itself. Moreover, it would be difficult, if not impossible, to maintain that the provision of emergency medical services would not merely constitute "a benefit to the public in general or to the community," rather than a "special and peculiar" benefit to "specific property owners," in contradiction of Oklahoma law. Harrington, 1934 OK 711, 39 P.2d 120; Gilfillan, 1915 OK 302, 148 P. 1012.[4]
¶10 The remaining purposes for the assessment under the Act are likely also incompatible with local improvement jurisprudence, albeit for different reasons. Other jurisdictions have analyzed the provision of law enforcement services as a local improvement before. In so doing, a Florida appellate court acknowledged that the "nature of law enforcement services . . . precludes funding by way of special assessment because such services, while undoubtedly beneficial to individuals, do not directly benefit the real property" burdened by a special assessment. Donnelly v. Marion Cnty., 851 So. 2d 256, 264 (Fla. Dist. Ct. App. 2003).
[5] Arguably, while law enforcement services could potentially generally render real property more valuable or more marketable, the relation between law enforcement services and value to real property remains tenuous at best, and the breadth of such an assertion could be used to justify nearly any assessment which may possibly provide even a minimal financial benefit to the real property. Id. at 265 (rejecting the argument that expert's testimony regarding how law enforcement protection generally renders real property more valuable and more marketable, as proof of conferring a "special benefit"). This rationale is consistent with the conclusion previously announced in the 1988 Opinion, wherein this office determined "that a local improvement must have a beneficial connection to property as opposed to the general welfare of the district's residents." 1988 OK AG 44, ¶ 11.
D. Fire protection districts are distinguishable as they provide tangible benefits to property owners such as lower insurance premiums and reduced destruction of property.
¶11 In addition to funding emergency medical services and law enforcement, the Act enables municipalities to levy assessments to operate and maintain "fire public safety protections" within the public safety protection district. Oklahoma law elsewhere provides for the creation of "fire protection districts" in unincorporated portions of counties for the purpose of promoting seemingly the same interest as the local improvement detailed herein. Compare 11 O.S.2021, §§ 29-156(A) and 29-160(2) with 19 O.S.2021, §§ 901.1--901.29. As the 1988 Opinion made clear, PSO previously upheld the ability of land holders within a certain county, but outside of the corporate limits of any incorporated city or town, to create "fire protection districts," which, if approved, are essentially funded by an assessment on real property within the district. 1988 OK AG 44, ¶¶ 4--5, (citing PSO); see also 19 O.S.2021, §§ 901.15, 901.19 (authorizing the issuance of bonds repaid through an assessment levied by the fire protection district).
¶12 In PSO, the Oklahoma Supreme Court determined that the assessment levied for the purposes of funding fire protection districts constituted a local improvement. PSO, 1983 OK 96, ¶ 22, 675 P.2d at 139. Distinguishable from the emergency services and general police services, the Court noted that, although the local improvement did not directly and tangibly manifest on the district's real property, there was a uniquely identifiable benefit to the real property in the reduction of insurance premiums for real property that fell within the district's boundaries. PSO, 1983 OK 96 n.26, 675 P.2d at 142 n.26. This interpretation mirrored decisions from other jurisdictions. City of N. Lauderdale, 825 So. 2d at 345 (Fla. 2002) (citing Lake County, citation omitted).[6]
¶13 Even so, the PSO court centered its conclusion on that the enabling statute's "authoriz[ation] [of] fire protection to be established exclusively and specifically for the benefit of property within a limited geographic area . . . ." PSO, 1983 OK 96, ¶ 22, 675 P.2d at 139 (third emphasis added). The Court found:
According to the Act, fire protection districts must necessarily lie outside any incorporated city or town, but within a particular county. Property included within a district does therefore receive benefit which is not common to any other area in the county, and that benefit is derived from the fundamental purpose of fire protection--shielding property from destruction by conflagration.
PSO, 1983 OK 96, ¶ 18, 675 P.2d at 138 (emphasis added) (footnotes omitted). Accordingly, the limited geographic area, as prescribed by that [fire protection district] statute's very terms, eliminated the concern that the local improvement was common to the inhabitants of a city or county as a whole. Such is not the case for public safety protection districts.
¶14 Here, the Act plainly includes the entirety of the initiating municipality. See 11 O.S.2021, § 29-153(A) ("A public safety protection district shall include all territory located within the municipality." (emphasis added)). Accordingly, the services rendered, i.e., law enforcement, emergency medical services or fire public safety protection, would benefit all property within the entire municipality. Such an outcome would contradict Oklahoma case law defining the contours of a "local improvement" in the Oklahoma Constitution's article X, section 7.
¶15 It is, therefore, the official Opinion of the Attorney General that:

A municipality may not levy an assessment for the purposes of "operation and maintenance" of a "public safety protection district" under the Public Safety Protection District Act, consistent with and without offending article 10, section 7 of the Oklahoma Constitution.

[7]

GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
ALEX PEDRAZA
ASSISTANT ATTORNEY GENERAL
FOOTNOTES
[1] Because the Act explicitly employs the term "assessment," this office will limit its legal analysis to whether the Act qualifies as an assessment for local improvements under article X, section 7 of the Oklahoma Constitution, and will refrain from analyzing any broader tax implications. Moreover, any reference in case law to "special assessment" is synonymous with assessment. Statutes and case law do not distinguish between "assessment" and "special assessment." As a result, this opinion will use the term "assessment," unless quoting case law or previous Attorney General opinions.
[2] Following the issuance of the 1988 opinion, the Legislature repealed the 1988 legislation during the next legislative session. See HB 1185, 1989 Okla. Sess. Laws ch. 130.
[3] Florida's Fourth District Court of Appeal later affirmed the validity of an assessment for the purposes of an integrated fire rescue/EMS program based on the City's novel approach in levying the assessment; however, this assessment ultimately excluded the cost for EMS services from the assessment in order to avoid a constitutional conflict. See Desiderio Corp. v. City of Boynton Beach, 39 So. 3d 487 (Fla. Dist. Ct. App. 2010)
[4] See also 1979--1980 Mich. Op. Atty Gen. 770 (1980), 1979--1980 Mich. Atty Gen. Op. No. 5706 ("Since a municipality's ambulance service must benefit all its residents, and since the property specially assessed does not receive a corresponding special benefit not provided the general public (City of Lansing v. Jenison, supra, 201 Mich 491, 497), the imposition or assessment levied against all real property within a city may not be characterized as a 'special assessment.'").
[5] The Florida District Court of Appeals distinguished Donnelly from Quietwater Ent., Inc. v. Escambia Cnty., 890 So. 2d 525 (Fla. Dist. Ct. App. 2005), on the basis that the real properties subjected to assessments in Quietwater were leaseholds, and therefore not simultaneously subject to ad valorem taxation.
[6] "Relying on Fire District No. 1 v. Jenkins, 221 So. 2d 740, 741 (Fla.1969), we concluded there was a logical relationship between the fire protection services and the assessed property in Lake County, because 'fire protection services do, at a minimum, specially benefit real property by providing for lower insurance premiums and enhancing the value of the property.'" City of N. Lauderdale, 825 So. 2d at 349.
[7] Opinions finding a statute unconstitutional "should be considered advisory only, and thus not binding until finally so determined by an action in the District Court of this state." State ex rel. York v. Turpen, 1984 OK 26, ¶ 12, 681 P.2d 763, 767. Consequently, this opinion is deemed advisory only.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions

 
Cite
Name
Level

 
1988 OK AG 44, 
Question Submitted by: The Honorable Grover Campbell, Oklahoma House of Representatives
Discussed at Length

Oklahoma Court of Criminal Appeals Cases

 
Cite
Name
Level

 
1983 OK CR 169, 675 P.2d 142, 
ALLISON v. STATE
Cited

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1948 OK 198, 199 P.2d 1012, 201 Okla. 531, 
ARMSTRONG v. SEWER IMPROVEMENT DIST. NO. 1
Discussed

 
1915 OK 302, 148 P. 1012, 46 Okla. 428, 
GILFILLAN v. CITY OF BARTLESVILLE
Discussed at Length

 
1916 OK 332, 156 P. 315, 53 Okla. 230, 
ALLEY v. CITY OF MUSKOGEE
Discussed

 
1934 OK 711, 39 P.2d 120, 170 Okla. 20, 
HARRINGTON v. CITY OF TULSA
Discussed at Length

 
1924 OK 92, 223 P. 640, 101 Okla. 22, 
CITY OF SAPULPA v. LAND
Discussed

 
1929 OK 296, 280 P. 430, 138 Okla. 84, 
FULKERSON v. JOHNSON
Discussed

 
1928 OK 659, 271 P. 1006, 133 Okla. 224, 
BRAGDON v. CITY OF MUSKOGEE
Discussed at Length

 
1983 OK 96, 675 P.2d 134, 
Public Service Co. of Oklahoma v. Northwest Rogers County Fire Protection Dist.
Discussed at Length

 
1984 OK 26, 681 P.2d 763, 55 OBJ 1013, 
State ex rel. York v. Turpen
Discussed

Title 11. Cities and Towns

 
Cite
Name
Level

 
11 O.S. 29-152, 
Initiating the Creation of a Public Safety Protection District
Cited

 
11 O.S. 29-153, 
Territory Governed, Management Authority, and Budgetary Oversight
Cited

 
11 O.S. 29-156, 
Annual Assessment Levy - Exceptions
Discussed

 
11 O.S. 29-160, 
Definitions
Cited

 
11 O.S. 39-101, 
Short Title
Cited

Title 19. Counties and County Officers

 
Cite
Name
Level

 
19 O.S. 871, 
Improvement Districts
Cited

 
19 O.S. 901.1, 
Board of County Commissioners - Fire Protection District
Discussed

 
19 O.S. 901.15, 
Bonds - Election
Cited

 
19 O.S. 903.1, 
Repealed
Cited